Charles L. GRIMES, Plaintiff,

v.

James L. DONALD, et al., Defendants,

and

DSC Communications Corporation, Nominal Defendant.

No. C.A. 13358.

Court of Chancery of Delaware, New Castle County.

Motion Argued: Nov. 13, 2000.
Decided: Nov. 30, 2000.

62. Since the record does not reflect the timing of the three Bills' investments, no interest will be added to the $29,199.43.

David A. Jenkins, Esquire, Smith Katzenstein & Furlow, LLP, Wilmington, Delaware, Attorney for Plaintiff.

Stephen E. Jenkins, Esquire, Ashby & Geddes, Wilmington, Delaware, Attorney for Defendants.

## OPINION

LAMB, Vice Chancellor.

### I.

The issue before me, on remand from the Delaware Supreme Court, is plaintiff's petition for an award of attorney's fees [1] in relation to his activities in bringing this lawsuit and making several related demands on the board of directors of DSC Communications Corporation. I dismissed the petition earlier because the relationship between plaintiff's efforts and the claimed benefit was so attenuated that I declined to accord plaintiff the ordinary presumption of causal relationship. The Supreme Court concluded that it was error to have done so. On remand, the parties have engaged in written discovery and introduced affidavit evidence into the record. Neither party asked for a hearing for the purpose of taking testimony. Instead, the matter was presented and argued on the written record and briefing.

### II.

The complaint in this action, filed on January 26, 1994 and last amended on June 1, 1994, challenged three compensation agreements between DSC Communications Corp. ("DSC") and its then-CEO and Chairman, James L. Donald ("Donald"). Those agreements were alleged to violate public policy, constitute corporate waste, and result in an abdication of board authority and responsibility in violation of Section 141(a) of the Delaware General Corporation Law ("DGCL"). The amended complaint also sought a declaration that a proxy statement disseminated in connection with the 1994 DSC annual meeting was false and misleading with respect to its description of certain rights granted to Donald in the challenged compensation agreements. Before filing suit, Grimes made a demand on the DSC board of directors that they take steps to vitiate the agreements, which was refused.

The defendants moved to dismiss all claims in the complaint except the proxy claim. In a memorandum opinion dated January 11, 1995, Chancellor Allen granted the motion to dismiss. *Grimes v. Donald,* Del. Ch., C.A. No. 13358, 1995 WL 54441, mem. op. at 3, Allen, C. (Jan. 11, 1995). The Chancellor granted plaintiff's Rule 54(b) motion to certify his order as final, and plaintiff took his appeal. By opinion dated April 11, 1996, the Supreme Court affirmed. *Grimes v. Donald,* Del.Supr., 673 A.2d 1207 (1996). Plaintiff Grimes made no effort at any time thereafter to advance the proxy statement claim alleged in his 1994 amended complaint, and those claims were, in effect, abandoned by him.

Plaintiff made a second demand on DSC's board, dated June 5, 1996, relating to the compensation agreements and, when

---

1. In *Grimes v. Donald,* Del.Supr., 755 A.2d 388 (2000), the Supreme Court reversed my earlier decision to deny the fee application and remanded the case to me for further consideration.

the board again rejected his demand, made written demand, pursuant to Section 220 of the DGCL, for the books and records relating to that decision. When the corporation refused to produce the documentation requested, plaintiff filed a Section 220 action. On August 5, 1998, I issued a post-trial opinion in favor of plaintiff in that case. *Grimes v. DSC Communications Corp.*, Del. Ch., 724 A.2d 561 (1998). However, before a final order giving effect to that decision was signed, DSC was acquired in a merger by Alcatel Alshom, S.A. ("Alcatel"), a French corporation. Thereafter, the accomplishment of that merger led me to dismiss Grimes's Section 220 action because he was no longer a stockholder of DSC. *Grimes v. DSC Communications Corp.*, Del. Ch., C.A. No. 16145, Lamb, V.C. (Nov. 6, 1998).

Before the merger closed, Grimes filed another lawsuit in this court, attacking that proposed transaction. *Grimes v. Donald, et al.*, Del. Ch., C.A. No. 16508 (filed July 2, 1998). That complaint was premised largely on the fact that Donald was retiring from DSC in connection with the merger and was expected to be paid in cash as much as $100 million pursuant to the terms of the disputed compensation agreements. The complaint alleged that these payments were so large that they must have affected negatively the negotiation of the exchange ratio in the merger so that the DSC stockholders would receive less in the merger than they deserved. Grimes sought to enjoin DSC and its board of directors from paying Donald any of the severance benefits in the Alcatel merger.

At a hearing on July 28, 1998, I declined to order expedited proceedings on Grimes's claim for injunctive relief. Thereafter, by order dated April 13, 1999, the complaint was dismissed on defendants' motion, without opposition from the plaintiff. No appeal followed.

## III.

Three days after the dismissal of the lawsuit challenging the merger, Grimes filed a petition in this long-dormant 1994 action to recover attorney's fees and expenses totaling $262,756.58 incurred in the three suits and the attendant demands pursued by him. In short, Grimes argues that Donald's retirement was due, in part, to his lawsuits and demands and that DSC benefitted as a result.

■■■ This petition is made pursuant to the familiar rule in *Allied Artists Pictures Corp. v. Baron*,[2] allowing an award of attorney's fees and costs where the defendants take some action that has the effect of mooting a derivative or class claim prior to its final adjudication. In such a case, a fee may be awarded where the plaintiff can show that (1) the litigation was meritorious when filed, (2) the action rendering the litigation moot produced the same or a similar benefit sought by the litigation, and (3) there was a causal relationship between the litigation and the action taken producing the benefit.[3] A fee may also be awarded where a corporate benefit results from a meritorious demand made on a board of directors, as the Court of Chancery has held in *Kaufman v. Shoenberg*[4] and *Bird, Inc. v. Lida.*[5]

---

**2.** *Allied Artists Pictures Corp. v. Baron*, Del. Supr., 413 A.2d 876 (1980).

**3.** *Id.*; *United Vanguard Fund, Inc. v. Takecare, Inc.*, Del.Supr., 693 A.2d 1076 (1997).

**4.** Del. Ch., 92 A.2d 295 (1952) ("[A] stockholder is entitled to his reasonable investigative fees if his demand produces some real

benefit to the Corporation without the necessity for litigation.").

**5.** Del. Ch., 681 A.2d 399 (1996). The standard articulated in *Bird* for awarding fees in the case of moot demands is substantially similar to that described in the cases dealing with moot litigations.

*Were Grimes's claims rendered moot?*

■ The parties' briefs devote little attention to this question. There is, however, a fair issue whether Grimes's substantive challenges to the Donald Package were rendered moot by the merger and Donald's related retirement or, instead, whether Grimes simply lost standing to continue pursuing those claims. A loss of standing is distinct from the concept of mootness and, ordinarily, does not entitle a plaintiff to recover fees under the *Allied Artists* rule.

The fee petition weaves these two strands of thought together in an unhelpful way by asserting that consummation of the Alcatel merger had the effect of rendering moot Grimes's lawsuits and demands *because* Donald's employment by DSC was ended thereby. But Donald's retirement could not vitiate claims relating to amounts paid to him either before or in connection with his retirement. Thus, his mere retirement, had it been unrelated to the merger, would not have had the effect of mooting an existing claim relating to his compensation arrangements that had been in place since 1990. Even the merger would not vitiate or moot those claims, which ordinarily would pass to the surviving entity in the merger under Section 259 of the DGCL.

By contrast, the merger had the effect of ending Grimes's status as a DSC stockholder and, thus, deprived him of standing to continue to prosecute claims that are derivative in nature.[6] This was equally true of the derivative claims asserted by Grimes in C.A. No. 16508 and the claims for waste that underlay his second demand on the DSC board of directors, which were also derivative in nature. Indeed, this loss of standing was the basis argued by defendants for the dismissal of C.A. No. 16508.

*Was litigation meritorious when filed?*

■ The fee petition argues that the claims presented "in his demands on DSC's board of directors and his lawsuits were, overall, meritorious." As it correctly acknowledges, the standard applied by the courts is whether the claims presented could withstand a motion to dismiss.[7] The petition does not argue either that the portions of the 1994 amended complaint (that were dismissed by Chancellor Allen) or the complaint in C.A. No. 16508 (that was dismissed by me) were meritorious when filed. It does, however, argue that both the second demand on the DSC board of directors and the proxy statement count in his 1994 amended complaint in this action meet this standard. I disagree.

Grimes characterizes his second demand as asserting a claim of waste in relation to the Donald Package. He then notes that claims of waste are seldom subject to summary adjudication, citing the decision of the Delaware Supreme Court in *Michelson v. Duncan*,[8] and concludes without further analysis that the claim asserted in that second demand would have been "meritorious" when filed.

The weakness in this syllogistic argument is that the second demand had already been refused by the DSC board of directors. Therefore, to survive a motion to dismiss his "waste" claim, Grimes would have been required to plead with particularity facts showing that the board's refusal to act on his demand was wrongful.[9] No

---

6. *Lewis v. Anderson*, Del.Supr., 477 A.2d 1040, 1049 (1984); *In Re First Interstate Bancorp Consolidated Shareholder Litig.*, Del. Ch., 729 A.2d 851, 860–64 (1998).

7. *Allied Artists Pictures Corp.*, Del.Supr., 413 A.2d at 879.

8. Del.Supr., 407 A.2d 211, 223 (1979).

9. *Levine v. Smith*, Del.Supr., 591 A.2d 194, 214 (1991); *Grimes v. Donald*, Del.Supr., 673 A.2d 1207, 1220 (1996).

such facts appear anywhere in his petition.[10] Thus, I am unable to conclude that the second demand was "meritorious" simply because it sought to allege corporate waste. Grimes relies on *Bird v. Lida*[11] in this connection, but it is unhelpful to him because it is not a demand refused case; rather the demand there caused the board to act to secure a benefit for the corporation.

■ I am also unable to conclude that the unprosecuted proxy statement claim in the amended complaint in this action satisfies the requirement that the claim rendered "moot" would have been meritorious when filed. Whatever the merits of that claim might have been, it died a natural death years before the Alcatel merger and Donald's retirement are said to have "mooted" Grimes's litigation efforts. Quite simply, *nothing* was done to prosecute that claim for more than four years. I can only conclude that Grimes and his lawyers abandoned that claim when they chose to proceed, instead, with the second demand and the subsequent books and records action under Section 220.

*Was DSC benefitted?*

■ The petition does not claim credit for whatever benefit the merger itself represented for either DSC or its stockholders. Instead, it argues that the related termination of Donald's employment produced "the benefits Mr. Grimes had been trying to produce for DSC for five years." (Fee App. at ¶ 12.) This "benefit" is further described as "the ending of Mr. Donald's mismanagement of the company and the corresponding termination of the Donald Package." (*Id.* at ¶ 24.) While acknowledging that Donald's termination "did result in certain payments to him

under the Donald Package," the petition goes on to contend that the termination of his employment "meant the DSC would no longer suffer from his mismanagement or from the enormous future expense of the Donald Package." (*Id.*)

Broadly speaking, it might be said that one of Grimes's objectives was to rid DSC of Donald. The more pointed objectives of his lawsuits and demands, however, were to vitiate the Donald Package, to stop Donald from receiving benefits under those compensation agreements, and to recover the allegedly excessive amounts paid to him in the past. For example, in his second demand, Grimes asked the board of directors to "take immediate steps to avoid the Donald Package *ab initio,* or to abrogate all parts of the Donald Package that are not 'entirely fair' (as that terms is used by the Delaware courts) or that constitute waste." Among other things, that letter demanded that "the provisions of the Donald Package that confer benefits on Donald in the event of a termination of Donald's employment should be declared to be objectively void as a matter of contract law because they constitute a penalty." These latter objectives were not accomplished by Donald's retirement. No money was recovered. Indeed, according to the allegations in C.A. No. 16508, additional tens of millions of dollars were paid to Donald.

Moreover, in strictly monetary terms it remains unclear how DSC or its stockholders "benefitted" from paying off 67 year-old Donald's contracts. Neither the petition nor the reply offers any meaningful explanation as to how the "benefit" of getting Donald out of management can be quantified and weighed against the enormous severance costs associated with his

---

10. I recognize that Grimes might have found such facts had he gained access to the books and records relating to the board's consideration of his demand before the accomplishment of the merger deprived him of standing.

11. Del. Ch., 681 A.2d 399 (1996).

retirement. Grimes merely argues that "the removal of Mr. Donald allows DSC to avoid both his continuing mismanagement and the enormous future expense of the Donald Package."

*Was the benefit causally related to the litigation?*

■ In remanding the fee petition for further consideration, the Supreme Court agreed with Grimes that he was entitled to an initial presumption that his lawsuits and demands played some role "in the decision to replace Donald as part of the corporate reshuffling that accompanied the merger." The court's opinion continued as follows:

It does not matter whether any facts about the corporate action suggest a causal connection to the litigation (or the absence of one). The fact that the corporate action came after the stockholder's action is enough to create an inference that the two events were connected, and the corporate defendants have the burden of rebutting that inference.[12]

The court's opinion suggested that DSC could rebut the causal presumption by affidavit.

On remand, DSC submitted the Affidavit of George B. Brunt, who was General Counsel, Senior Vice–President, and Secretary of DSC before the merger and occupies the same offices at Alcatel USA, Inc., the surviving entity. Grimes was offered discovery into the subject matters addressed in the Brunt Affidavit but decided to forego any inquiry.

The Brunt affidavit convincingly disproves the existence of any causal connection between the litigations and/or demands and DSC's decision to enter into the merger. It states that "DSC's decision to enter into the Merger was based solely on strategic business decisions to promote shareholder wealth. The decision

to merge was not based in any way on Mr. Grimes' litigation or demands on DSC." (Brunt Affidavit at ¶ 6.) The affidavit also describes those strategic business considerations and the DSC board's consideration of them. Grimes does not challenge this part of the Brunt Affidavit, and I conclude that it is sufficient to overcome the presumption of a causal relationship between the litigation and the merger.

The Brunt Affidavit also relates information about the circumstances in which Donald came to leave DSC's employment. According to the Brunt Affidavit, Donald informed the DSC board of directors privately in September 1997 of his intention to retire when a suitable replacement could be found. This information was communicated publicly by DSC in April 1998, by press release. At the time of this public announcement, Donald was approximately 67 years of age. Two months later, before a replacement could be found, DSC agreed to merge with Alcatel. "Accordingly, the search for a replacement ended, and Mr. Donald stepped down from his positions at DSC." (Brunt Affidavit at ¶ 5.) The Brunt Affidavit goes on to state "unequivocally" that "Mr. Grimes' demands and/or litigation did not in any way cause ... Mr. Donald's retirement." (*Id.* at ¶ 10.) Brunt also avers his lack of awareness of "anything to indicate a connection between Mr. Grimes' actions, the Merger, and/or Mr. Donald's retirement." (*Id.*) These conclusions are supported by Brunt's statement that he was present at all of the DSC board meetings relating to the merger, as well as numerous other key meetings, and "constantly discussed the Merger with Mr. Donald." (*Id.* at ¶ 4.) Brunt also avers that he made diligent inquiry of others who attended meetings at which he was not present. From this he concludes that "Mr. Grimes' demands or

12. *Grimes v. Donald,* Del.Supr., 755 A.2d 388        (May 11, 2000) (ORDER).

litigation were never mentioned as factors (and were not factors in any way) in ... Mr. Donald's decision to retire from DSC." (*Id.*)

Grimes replies that the Brunt Affidavit is not sufficient to rebut the operative presumption of causation because it does not explain *why Donald did decide to retire* and does not negate the possibility that Donald was privately or secretly motivated to retire as a result of Grimes's lawsuits and demands. According to Grimes, only an obviously self-serving affidavit from Donald could suffice for that purpose. This argument reflects an important shift in Grimes's position. The Supreme Court agreed with Grimes that he was entitled to a presumption that his litigations and/or demands played a role "in the decision to replace Donald as part of the corporate reshuffling that accompanied the merger." [13] Now that the discovery has shown that Donald had already announced his retirement and taken himself out of contention before any "corporate reshuffling" took place, Grimes is forced to shift direction to argue that the pertinent inquiry is whether his lawsuits and/or demands played a role in Donald's private decision to retire.

When this argument crystallized at oral argument, I gave the defendants the opportunity to supplement the record with an affidavit from Donald. Their counsel later informed me that his clients declined to do so, explaining that decision as follows:

> DSC has concluded that no affidavit by [Mr. Donald] is needed since it has fully answered the questions posed by the Supreme Court.... To put [it] simply, DSC believes that Mr. Donald's retirement is not the type of event for which an award of fees is appropriate, and was never sought by Mr. Grimes in any of his demands or actions.

Without reaching the issue of whether or not Donald's retirement "is the type of event for which an award of fees is appropriate," I conclude that the Brunt Affidavit is enough to overcome the presumption that Donald's retirement was causally related to Grimes's efforts. Brunt worked closely with Donald and was a close observant of all of the relevant events. He states clearly and unequivocally that Donald's retirement had nothing to do with Grimes's lawsuits and/or demands. Given the history of this protracted litigation and Donald's resistance at every step along the way, Brunt's evidence is entirely believable and consistent with Donald's conduct throughout. Moreover, at the time Donald first announced his retirement, the 1994 action had been dismissed, that dismissal affirmed on appeal, and the second demand refused. Certainly, the prospect of jeopardy to Donald flowing from the threat of further litigation was remote. I see no reason to require a self-serving affidavit from Donald before accepting as true Brunt's evidence that Donald's decision to retire was unrelated to Grimes's efforts.

## IV.

For all of these reasons, the petition for fees will be denied. There is insufficient reason for me to conclude either that Grimes's actions or demands were "meritorious" under the required standard, that a benefit resulted to the corporation therefrom that was the same or similar to that sought by Grimes, or that there exists a causal relationship between Grimes's actions and Donald's decision to retire from DSC's employ, the only benefit Grimes now claims. IT IS SO ORDERED.

13. *Id.*