**DOVER HISTORICAL SOCIETY, INC., Henry R. Horsey, Holly Johnson and Charles Johnson, Petitioners–Below, Appellants,**

v.

**CITY OF DOVER PLANNING COMMISSION, Young & Malmberg, P.A., a Delaware professional association, and Yozima, L.L.C., a Delaware limited liability company, Respondents–Below, Appellees.**

**The Friends of Old Dover, Inc., Henry R. Horsey, Holly Johnson and Charles Johnson, Petitioners–Below, Appellants,**

v.

**City of Dover Planning Commission, Young & Malmberg, P.A., a Delaware professional association, and Yozima, L.L.C., a Delaware limited liability company, Respondents–Below, Appellees.**

Nos. 111, 2006, 112, 2006.

Supreme Court of Delaware.

Submitted: June 14, 2006.
Decided: July 10, 2006.

**13.** § 2330(g) (italics added).

**14.** *State v. Reynolds*, 669 A.2d 90, 94 (Del. 1995).

Grover C. Brown, Esquire, of Gordon, Fournaris & Mammarella, P.A., Wilmington, Delaware, and Michael J. Maimone, Esquire, of Edwards Angell Palmer & Dodge, LLP; for Appellants.

Nicholas H. Rodriguez and William W. Pepper, Sr., Esquires, of Schmittinger & Rodriguez, P.A., Dover, Delaware; for Appellee City of Dover Planning Commission.

William E. Manning and Richard A. Forsten, Esquires, of Klett Rooney Lieber & Schorling, Wilmington, Delaware; for Appellees Young & Malmberg, P.A. and Yozima, L.L.C.

Before HOLLAND, BERGER and JACOBS, Justices.

JACOBS, Justice.

The petitioners below-appellants,[1] appeal from the denial of two applications for

---

1. The appellants in this action are The Friends of Old Dover, Inc., The Dover Histori-

cal Society, Henry R. Horsey, and Holly and Charles Johnson. The appellees in this action

attorneys' fees and expenses incurred in litigation over the preservation of four historic buildings that were located in the Dover Historic Green District. The appellants claim that in denying their fee applications the Superior Court abused its discretion because: (1) their first application was meritorious under the "common benefit" exception to the "American Rule" under which each side normally bears its own costs; (2) *res judicata* was improperly applied to bar the second fee application; and (3) the second application was meritorious, and should have been granted, under the "bad faith" and "mootness" exceptions. We conclude that Superior Court committed no error in denying the appellants' first application for fees and costs, but the Court did err by not granting the second application under the "bad faith" exception to the American Rule. We therefore affirm the Superior Court Order dated June 20, 2005, and reverse its Order dated January 31, 2006.

### Facts

This case arises out of the proposed construction of a new three-story office building in the Dover Green Historic District. As the City of Dover Code required, the developers sought from the Dover Planning Commission ("DPC") an architectural review certificate that would grant the developers permission to construct the building. Under the Dover Code, an application for an architectural review certificate must be referred initially to the Historic District Commission ("HDC") for deliberation and a recommendation. That was done here.

On January 16, 2003, the HDC recommended that the certificate be awarded to the developers for the new construction.

Following the HDC's recommendation, the DPC approved the issuance of the certificate. On June 18, 2003, the appellants, who are concerned residents and/or owners of property located on the Green, and various similarly concerned organizations, applied for a writ of *certiorari* to obtain Superior Court review of the DPC's decision. Seeking to prevent the issuance of the certificate, the appellants claimed that: (i) the proposed building did not conform to the standards governing construction within the Dover Historic Green District; and (ii) the proposal would place the new building within two feet of four existing historic buildings (two of which dated to the 18th century, the other two dating to the 17th century), and would require their partial demolition.

On August 25, 2003, the Superior Court granted the appellees' motion to dismiss the appellants' petition for lack of standing. This Court reversed that dismissal on December 2, 2003 and remanded the case to the Superior Court.[2] On remand, the Superior Court overturned the decision of the DPC, and remanded the case to that body for further factual findings. The Superior Court held that the DPC had exceeded its jurisdiction by approving a nonconforming structure without adhering to the *Design Guidelines and Standards,* which are provisions of the Dover Code that govern new construction within the Dover Historic District.

The DPC again considered the proposed plan, this time within the framework of the criteria articulated in the *Guidelines.* In a four-page letter decision, the DPC re-approved the plan on January 27, 2005. Thereafter, the appellants applied to the

---

are the City of Dover Planning Commission, Young & Malmberg, P.A., and Yozima, L.L.C. Except where otherwise noted, we refer to the parties in this Opinion collectively as "appellants" and "appellees."

**2.** *Dover Historical Soc'y v. City of Dover Planning Comm'n,* 838 A.2d 1103, 1116 (Del. 2003).

Superior Court for an award of attorneys' fees. In that fee application, appellants also challenged the DPC's re-approval (on remand) of the proposed plan. On June 20, 2005, the Superior Court denied the appellants' application for fees, and ordered appellants to file a new petition if they sought to challenge the second DPC approval. The Superior Court's Order denying fees is one of the two orders presently being appealed.

On July 7, 2005, the appellants filed a second petition in the Superior Court seeking review of the DPC's issuance of the architectural review certificate. For Michael Zimmerman, a principal of appellee, Yozima, L.L.C., that second petition was the proverbial straw that broke the camel's back. On the morning of July 16—the day after the appellees were served with the second petition—an angry Zimmerman climbed into a trac hoe (a piece of construction equipment) and demolished three of the four historic structures in the Historic District that were the subject of the first and second Superior Court petitions. In response, the City of Dover revoked the architectural review certificate that the DPC had previously granted to the appellees Young & Malmberg, P.A. ("Y & M"), and Yozima, L.L.C. ("Yozima").

The appellants then filed a second application for attorneys' fees claiming that Zimmerman's conduct, which also was attributable to Y & M and Yozima, constituted "bad faith" that justified a fee-shifting award. The Superior Court denied that second application by Order dated January 31, 2006. That Order is the basis for the appellants' second appeal. The two appeals were consolidated on April 13, 2006.

### Analysis

■■■ At issue on this appeal is the Superior Court's denial of the appellants' two applications for attorneys' fees and expenses. We review a denial of an application for counsel fees and costs for abuse of discretion.[3] "When an act of judicial discretion is under review, the reviewing court may not substitute its own notions of what is right for those of the trial judge, if his judgment was based upon conscience and reason, as opposed to capriciousness or arbitrariness."[4] Where it is in issue, we review the Superior Court's formulation of the appropriate legal standard *de novo*.[5]

■■■ The appellants claim that the Superior Court erred by denying their first application for attorneys' fees, because that application was meritorious under the "common benefit" exception to the American Rule. As earlier noted, the American Rule requires that "a litigant must, himself, defray the cost of being represented by counsel."[6] Under the "common benefit" exception, a litigant may, nonetheless, receive an award of attorneys' fees if: (a) the action was meritorious at the time it was filed, (b) an ascertainable group received a substantial benefit, and (c) a causal connection existed between the litigation and the benefit.[7]

The appellants contend that they qualify under the common benefit exception because their petition was meritorious when

---

3. *Montgomery Cellular Holding Co. v. Dobler,* 880 A.2d 206, 210 (Del.2005).

4. *Chavin v. Cope,* 243 A.2d 694, 695 (Del. 1968).

5. *Gannett Co. v. Bd. of Managers of the Del. Criminal Justice Info. Sys.,* 840 A.2d 1232, 1240 n. 25 (Del.2003).

6. *Chrysler Corp. v. Dann,* 223 A.2d 384, 386 (Del.1966).

7. *Tandycrafts, Inc. v. Initio Partners,* 562 A.2d 1162, 1167 (Del.1989).

filed. Moreover, they claim, it conferred an aesthetic benefit upon the City of Dover and its citizens, by causing the issuance of the certificate to be reversed, thereby preventing the construction of the noncon-forming new building. The appellants ac-knowledge that this exception usually arises in the context of corporate litigation, but they emphasize that "[t]he form of the suit is not a deciding factor; rather, the question to be determined is whether a plaintiff, in bringing a suit either individu-ally or representatively, has conferred a benefit on others."[8]

The appellees respond that the common benefit exception applies only in the con-text of corporate litigation or, at a mini-mum, only in cases brought in equity. Neither condition being present here, the appellees contend that the Superior Court correctly denied the appellants' fee appli-cation.

▉▉▉▉ Under Delaware law, litigants are ordinarily responsible to pay the costs of their own representation in litigation.[9] Express statutory authorization and cer-tain equitable doctrines provide limited ex-ceptions to that rule. The "common fund" exception enables a litigant who succeeds in conferring a monetary benefit upon an ascertainable class of individuals to recov-er costs from the fund that he or she has created.[10] A somewhat related exception, the "corporate benefit" doctrine, allows a litigant to recover fees and expenses from a corporation where the litigation has con-ferred some other (non-monetary) valuable benefit upon the corporate enterprise or its shareholders.[11] The purpose underly-ing these fee-shifting doctrines is to bal-ance the equities to prevent "persons who obtain the benefit of a lawsuit without contributing to its cost [from being] un-justly enriched at the successful litigant's expense."[12]

▉▉▉▉ A threshold issue that should be addressed (but which was not briefed by the parties) stems from the fact that this action was filed in the Superior Court, not the Court of Chancery. A court of equity has jurisdiction to award counsel fees as part of costs in a proper case, but in an action at law, absent a statutory or con-tractual provision, a court may not ordi-narily order the payment of attorneys' fees as costs to be paid by the losing party.[13] That rule is not as rigid as would appear at first glance, however. The Superior Court does hear cases in which it is occasionally required to apply equitable principles. In such cases the Superior Court has jurisdic-tion to award attorneys' fees even if no contract or statute requires it.[14] This is one of those cases. Here, the appellants'

---

**8.** *Id.* at 1166.

**9.** *Id.* at 1164.

**10.** *In re First Interstate Bancorp S'holder Li-tig.*, 756 A.2d 353, 357 (Del.Ch.1999).

**11.** *Id.* The appellants characterize the doc-trine as the "common benefit" doctrine, but our case law largely refers to it as the "corpo-rate benefit" doctrine. The "common fund" doctrine is irrelevant to the present case be-cause no fund was created as a result of the litigation.

**12.** *Goodrich v. E.F. Hutton Group, Inc.*, 681 A.2d 1039, 1044 (Del.1996).

**13.** *See, e.g., Casson v. Nationwide Ins. Co.*, 455 A.2d 361, 370 (Del.Super.1982).

**14.** *See, e.g., Burge v. Fidelity Bond & Mortgage Co.*, 648 A.2d 414, 421–22 (Del.1994) (uphold-ing award of attorneys' fees in a Superior Court action involving a mortgage foreclo-sure, which is inherently equitable). Similar-ly, in this case the appellants' request for attorneys' fees under the "bad faith" excep-tion to the American Rule would require the Superior Court to "exercise its inherent equi-table authority to 'control its own process.'" *Id.* at 422.

petitions sought to prevent the issuance of the architectural review certificate and as a consequence, the proposed construction. In our view, that underlying claim, which sought relief equivalent to an injunction, was sufficiently equitable in nature to empower the Superior Court to entertain a fee application based on equitable doctrines.

■ The appellants have not cited to us, nor have we found, any case where the common fund or corporate benefit exception was applied in a building construction context. Nor, in our view, do the instant facts merit an extension of that exception to the circumstances presented here. The corporate benefit exception to the American Rule is typically applied in business enterprise litigation. Its purpose is to redistribute equitably a portion of the benefit received by the corporation to the successful shareholder litigants in the form of reimbursing their costs.[15] In this case the benefit resulting from the first petition was that the DPC was ordered to reevaluate the application for an architectural review certificate, consistent with the *Guidelines*.

In essence, this case is not unlike one where a citizen sues successfully on behalf of the public interest as a private attorney general, and then seeks reimbursement of his or her attorneys' fees for having successfully caused a government agency (here, the DPC) to do its job properly. In the public interest litigation context, absent legislative authorization, fee-shifting applications are disfavored.[16] Historically, our courts have been cautious about creating and expanding judge-made exceptions to the American Rule absent express and clear legislative guidance.[17] Here, to the extent this lawsuit caused the DPC to perform properly, it clearly created a social benefit. But, that benefit is not of the kind that justifies creating a new *judge*-made exception to the American Rule. For this reason we hold that the Superior Court correctly denied the appellants' first application for attorneys' fees and costs.

■ We next consider the appellants' challenge to the denial of their second application for attorneys' fees and costs.

---

**15.** *See Goodrich*, 681 A.2d at 1044.

**16.** *See, e.g., Alyeska Pipeline Service Co. v. Wilderness Soc'y*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975) (proscribing federal courts from applying a "private attorney general" theory to shift fees in public interest litigation because the power to choose which vindications of the public interest warrant an attorneys' fees award rests in Congress alone); *Jones v. Muir*, 511 Pa. 535, 515 A.2d 855 (1986) (refusing to shift fees absent a statutory provision where public interest litigation was not a traditional, judicially-created basis for a fee award, and where the General Assembly had chosen to govern fee awards as evidenced by statutory language); *New Mexico Right to Choose/NARAL v. Johnson*, 127 N.M. 654, 986 P.2d 450 (1999) declining to adopt the private attorney general doctrine, under which private plaintiff's attorneys would have been entitled to fees in cases where, as a result of their efforts, rights of societal importance were protected to the benefit of a large number of people; *Hamer v. Kirk*, 64 Ill.2d 434, 1 Ill.Dec. 336, 356 N.E.2d 524 (1976) (rejecting an award of attorney's fees solely on the basis of a public interest rationale, *i.e.*, the private attorney general doctrine); *State Bd. of Tax Comm'rs v. Town of St. John*, 751 N.E.2d 657 (Ind.2001) (holding that Indiana does not recognize the private attorney general exception to the general American Rule that the right to recover attorney's fees from one's opponent does not exist in the absence of a statute or some agreement); *Robes v. Town of Hartford*, 161 Vt. 187, 636 A.2d 342 (1993) (holding that attorneys' fees are ordinarily unrecoverable in the absence of statutory authority or the parties' contractual provision concerning this expense, and thus unrecoverable under the private attorney general doctrine).

**17.** *Walsh v. Hotel Corp. of America*, 231 A.2d 458, 462 (Del.1967).

The appellants first claim that the Superior Court erred by holding that the appellants' second application was barred under *res judicata* principles. We agree.

■ *Res judicata* operates to bar a claim where the following five-part test is satisfied: (1) the original court had jurisdiction over the subject matter and the parties; (2) the parties to the original action were the same as those parties, or in privity, in the case at bar; (3) the original cause of action or the issues decided was the same as the case at bar; (4) the issues in the prior action must have been decided adversely to the appellants in the case at bar; and (5) the decree in the prior action was a final decree.[18]

The Superior Court held that *res judicata* bars the appellants' second application because (the Court found) all five criteria were satisfied here. Specifically, the Superior Court had jurisdiction over the appellants' first fee application, the parties were identical, the issue (whether to award fees and costs) was the same, the Superior Court had previously decided that issue adversely to the appellants, and the order denying the application was a final decree.

In our view, the bar of *res judicata* was improperly applied. The second fee application rested entirely upon facts that did not arise until after the first application had been denied, *i.e.*, Mr. Zimmerman's destruction of the two historic buildings. Because those new facts give rise to a quite different legal theory of fee entitlement that was neither presented nor decided in the first fee application, *res judicata* could not operate to bar the appellants' second application. The *res judicata* ruling was, therefore, legally erroneous, because the doctrine was misapplied to bar a claim for relief that was

never adjudicated in the earlier fee proceeding.

Despite having denied the fee application on *res judicata* grounds, the Superior Court nevertheless prudentially proceeded to consider the appellants' claims that fees should be awarded under the equitable mootness and bad faith exceptions to the American Rule. The Superior Court held that neither exception applied. The appellants contend that this ruling is erroneous as well. We address the issues presented by the Superior Court's rejection of the "mootness" and "bad faith" claims.

■ The appellants contend that because their second fee application was meritorious under the "mootness" exception, the Superior Court erred in denying it. Under the "mootness" exception, a court may award attorneys' fees where the fee applicant demonstrates that: (1) the litigation was meritorious when filed, (2) the action rendering the litigation moot produced the same or a similar benefit sought by the litigation, and (3) there was a causal relationship between the litigation and the action taken producing the benefit.[19]

The Superior Court rejected the appellants' "mootness" claim for two reasons. First, it held that the mootness doctrine is an extension of the corporate benefit exception, which the Court had already determined was inapplicable. Second, the Court held that the second petition did not satisfy the "mootness exception" criteria, because the conduct that mooted the litigation—Mr. Zimmerman's destruction of the buildings—created the precise opposite of the benefit that appellants were seeking to achieve—to preserve those historic buildings. The appellants disagree. They claim that the benefit they sought from

---

**18.** *See Bailey v. City of Wilmington,* 766 A.2d 477, 481 (Del.2001).

**19.** *Grimes v. Donald,* 791 A.2d 818, 821 (Del. Ch.2000).

prosecuting the lawsuit was narrower: to invalidate the architectural review certificate to prevent the new building from being constructed. Their second petition, the appellants urge, led to that precise result: its very filing caused Mr. Zimmerman to destroy the historic buildings, which in turn led the City of Dover to revoke the architectural review certificate, which in turn prevented the new building from being constructed. That result (they claim) mooted the litigation.

This argument is a too-clever-by-half distortion of the mootness exception. It is also counterfactual. To even make the argument the appellants must splinter their claimed benefit into two separate parts. When arguing for the application of the mootness exception, appellants assert that their litigation objective was to invalidate the architectural review certificate and thereby prevent the construction. But, when arguing for the application of the bad faith exception, appellants contend that the purpose of the litigation was to preserve the threatened historic buildings. In fact, appellants were seeking to achieve both goals at the same time, with neither goal having priority over the other. The second petition resulted in only one of those goals, but at the expense of the other. That is, if appellants' view of the matter is accepted, the building construction was stopped, but only at the expense of the equally important goal of preserving the historic buildings.

More fundamentally, however, the fee application did not "moot" the litigation in any legally meaningful sense. What mooted the litigation was Mr. Zimmerman's wholly unforeseeable and improper conduct. To award fees on mootness grounds in these circumstances would perversely reward the appellants for the improper conduct of another party for which appellants should not be entitled to claim credit. To rule otherwise would undermine the policy underlying the mootness exception. We, therefore, uphold the Superior Court's determination that the mootness exception is inapplicable.

The appellants' final claim is that the Superior Court erred by denying their second fee application under the bad faith exception to the American Rule. Delaware courts have the power to shift attorneys' fees where a "losing party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'"[20] This exception applies only in extraordinary cases, its purpose being to "deter abusive litigation in the future, thereby avoiding harassment and protecting the integrity of the judicial process."[21] Bad faith has been found to exist (inter alia) in cases where "parties have unnecessarily prolonged or delayed litigation, falsified records, or knowingly asserted frivolous claims[,] ... mis[led] the court, alter[ed] testimony, or chang[ed] position on an issue."[22]

The Superior Court interpreted these precedents as applying only to abusive "litigation tactics, not [to] any conduct remotely related to the case before the court."[23] That construction of the bad faith exception (to require that the offensive conduct take place in the court proceeding itself) is, in our view, overly narrow. Mr. Zimmerman's destruction of the buildings was a direct (albeit highly improper) response to the appellants' filing

**20.** *Slawik v. State,* 480 A.2d 636, 639 n. 5 (Del.1984).

**21.** *Brice v. State Dept. of Correction,* 704 A.2d 1176, 1179 (Del.1998).

**22.** *Beck v. Atlantic Coast PLC,* 868 A.2d 840, 850–51 (Del.Ch.2005) (footnotes omitted).

**23.** *Friends of Old Dover, Inc. v. City of Dover Planning Comm'n,* 2006 WL 336997 (Del.Super. Jan 31, 2006).

their second petition. It is difficult to imagine conduct more abusive and disrespectful of the judicial process, than a party's intentional destruction of the very subject matter that the lawsuit seeks to protect and preserve. Although that behavior is atypical of the conduct normally found to invoke this exception (and thankfully so), nonetheless it constitutes bad faith that manifestly warrants a fee-shifting award.

 The Superior Court also rejected the appellants' bad faith exemption claim on the ground that "it is unfair, not to mention inaccurate, for Petitioners to summarily conclude that Mr. Zimmerman's actions are attributable to Y & M and Yozima simply because they did not make an argument to the contrary in their responses." [24]

That ruling is also erroneous because it disregards several undisputed material facts: (i) Mr. Zimmerman was a principal of Yozima; (ii) Y & M and Yozima owned the three structures that Mr. Zimmerman destroyed; (iii) neither Yozima nor Y & M took any action against Mr. Zimmerman for his conduct; and (iv) Yozima and Y & M initially wanted to destroy those buildings but the HDC opposed their total demolition. Given these undisputed facts, it is disingenuous for Yozima and Y & M to contend that Mr. Zimmerman was not acting on their behalf at the time he forever altered the Historic District.[25] We conclude that the Superior Court erred in finding that Mr. Zimmerman's conduct was not attributable to Yozima and Y & M.

### Conclusion

For the reasons set forth above, the Order of the Superior Court dated June 20, 2005 is affirmed; the Order of the Superior Court dated January 31, 2006 is reversed; and the case is remanded to the Superior Court for proceedings consistent with this Opinion.

---

24. *Id.*

25. The appellees' argument that Mr. Zimmerman is not a lawyer and therefore cannot be a member of Y & M, misses the mark. Mr. Zimmerman could still act in the interests of both Yozima and Y & M without being a member of Y & M, because he was acting to advance the interest central to both companies.