Richard J. KORN and Andrew Dal Nogare, Plaintiffs Below, Appellants,

v.

NEW CASTLE COUNTY, a political subdivision of the State of Delaware, Christopher A. Coons, as County Executive, David W. Singleton as Chief Administrative Officer, Paul G. Clark, as President of New Castle County Council, and Joseph Reda, Robert S. Weiner, William J. Tansey, Penrose Hollins, Karen G. Venezky, Patty W. Powell, George Smiley, John J. Cartier, Timothy P. Sheldon, Jea P. Street, David Tackett, and James W. Bell, as Members of New Castle County Council, Defendants Below, Appellees.

No. 165, 2006.

Supreme Court of Delaware.

Submitted: Jan. 10, 2007.
Decided: March 30, 2007.
Revised: April 17, 2007.

Ronald G. Poliquin, Esquire, of Young, Malmberg & Howard, P.A., Dover, Delaware, and Gary F. Traynor, Esquire (argued), J. Clayton Athey, Esquire, and Laina M. Herbert, Esquire, of Prickett, Jones & Elliott, P.A., Wilmington, Delaware, for Appellants.

Gregg E. Wilson, Esquire (argued), Carol J. Dulin, Esquire and Dennis J. Siebold, Esquire, of the New Castle County Law Department, Wilmington, Delaware, for Appellees.

Before STEELE, Chief Justice, HOLLAND, BERGER, and JACOBS, Justices, and VAUGHN, President Judge [1], constituting the Court en Banc.

BERGER, Justice.

In this appeal, we consider whether taxpayers may recover attorneys' fees if their litigation satisfies the requirements of the so-called "common benefit" exception to the standard rule, under which each party bears its own attorneys' fees. The common benefit exception allows a successful litigant to recover attorneys' fees if the litigation creates a monetary benefit that is shared by others. Historically, this exception has been applied to business enterprise litigation where, for example, a stockholder may recover funds for the benefit of the entire corporation. The exception is premised on the equitable principle that those who benefit from litigation would be unjustly enriched if the entire cost of the action were borne by the successful plaintiff. We hold that the rationale of the common benefit exception applies to taxpayer suits that result in a quantifiable monetary benefit for all taxpayers.

## Factual and Procedural Background

This action was precipitated by the New Castle County Executive's 2004 budget address, in which the County Executive stated that his administration had set up twelve reserve accounts holding more than $200 million in surplus revenues. Appellants, Richard J. Korn and Andrew Dal Nogare (collectively, "Korn"), believing the reserves to be unlawful, filed suit in the Court of Chancery. The initial complaint sought a declaratory judgment that the reserves violated several statutory require-

---

1. Sitting by designation pursuant to DEL. CONST. ART. IV, § 12 and DEL. SUPR. CT.

R. 2, 4.

ments. In addition, Korn sought an injunction staying a pending $80 million bond sale until the court determined the validity of the reserves.

Korn prevailed. In granting summary judgment on three counts of Korn's complaint, the Court of Chancery noted:

> The fact is that the County Executive, through unilateral action, diverted surplus money into executive designations, avoiding the strictures of 9 *Del. C.* § 1158(a) that requires the use of available surpluses to balance the budget. Those acts had real and legal consequences and would only be valid if they were the objects of legislative action.[2]

The trial court did not enjoin the bond sale, "because the County had voluntarily stayed its bond issuance, and the Court did not have reason to conclude that the County would proceed with the bond sale...."[3]

In March 2005, shortly after the trial court's decision, the County Council adopted two ordinances that created new reserve accounts and retroactively appropriated the funds in the invalid reserves to the new reserve accounts. Korn responded by filing an amended complaint attacking the new ordinances. In April 2005, after an audit report disclosed the existence of a $650,000 surplus in the County's Light Tax Fund, the trial court allowed Korn to supplement his complaint by adding a challenge to the Light Tax Fund surplus. In September 2005, the Court of Chancery granted the County's motions for summary judgment as to all claims and dismissed Korn's amended complaint with prejudice. In its decision, the trial court noted that the claim relating to the unlawful accumulation of the Light Tax Fund surplus had been mooted, as the surplus was being used to reduce light tax rates for fiscal year 2006. Korn applied for an award of attorneys' fees, claiming that his litigation provided millions of dollars in savings to all taxpayers. The trial court denied his application, and this appeal followed.

### Discussion

Korn did not appeal the trial court's dismissal of his amended complaint. His appeal is limited to the denial of his fee application. Korn sought an award of $500,000 in fees and costs. In support of his fee application, Korn submitted evidence that approximately $540,000 of the Light Tax Fund surplus was used to reduce the light tax rates. In addition, Korn provided evidence that most of the projects that the $80 million bond sale was intended to fund, instead were paid from the surplus accumulating in the improper reserve funds. Finally, Korn submitted an analysis which concluded that the County had saved between $26 and $37 million as a result of the abandonment of the $80 million bond sale. The County Executive's FY2006 budget address arguably supported Korn's conclusion. According to the County Executive, the decision to forego the bond sale saved the County $4.8 million per year of debt service and will continue to do so for the next twenty years.[4]

The County did not dispute Korn's figures. Instead, it argued that any purported "savings" generated by the decision to forego the bond sale were more than offset by other expenses that resulted, inevitably, from that decision. The County used sur-

---

**2.** *Korn v. New Castle County,* 2005 WL 396341 at *7 (Del.Ch.).

**3.** *Korn v. New Castle County,* 2005 WL 2266590 at *3 (Del.Ch.).

**4.** Appellant's Appendix, A–420.

plus funds instead of bond money for its planned projects. In 2006, after the surplus funds were largely depleted, the County raised property tax rates and authorized a new $70 million bond sale. Because interest rates were higher in 2006 than in 2004, the County argues, Korn created no benefit by delaying the bond sale. The County offers no similar analysis for the Light Tax Fund surplus, except to assert that it "voluntarily" corrected the problem promptly after Korn filed suit on that issue.

The Court of Chancery did not address the question of whether the common benefit exception to the standard rule should be applied in the context of a taxpayer suit. Rather, it held that any monetary benefits that may have resulted from Korn's litigation were too speculative to support a fee award:

> With respect to the cancellation of the bond issuance, the County has decided to forego additional borrowing and spend down the financial reserves. Of course, there are costs associated with issuing bonds to raise revenues. It is these costs that plaintiffs point to as the "savings" to the County and its taxpayers. There are also costs, however, associated with depleting reserves. Determining the appropriate size of financial reserves to be maintained by a governmental unit necessarily involves many considerations, of which the return on investment from those reserves, the effect of the reserve on bond ratings, estimates of future expenses and the future costs of raising capital, are but a few. In other words, except as constrained by law, the decision whether to fund operating and capital expenses by borrowing, taxing, or spend-

ing down reserves, and the appropriate size of the reserves to be maintained, are quintessentially political questions. Similarly, questions of legality aside, the amount of light tax and light tax reserves to be levied and maintained are quintessentially political questions. To conjecture that reducing taxes or canceling bond issuances in favor of spending down reserves has worked a calculable economic benefit to taxpayers requires speculation too profound to support an exception to the general American rule on fees.[5]

∎ In a recent case, this Court reviewed the relevant law as follows:

> Under Delaware law, litigants are ordinarily responsible to pay the costs of their own representation in litigation. Express statutory authorization and certain equitable doctrines provide limited exceptions to that rule. The "common fund" exception enables a litigant who succeeds in conferring a monetary benefit upon an ascertainable class of individuals to recover costs from the fund that he or she created. A somewhat related exception, the "corporate benefit" doctrine, allows a litigant to recover fees and expenses from a corporation where the litigation has conferred some other (non-monetary) valuable benefit upon the corporate enterprise or its shareholders. The purpose underlying these fee-shifting doctrines is to balance the equities to prevent "persons who obtain the benefit of a lawsuit without contributing to its cost [from being] unjustly enriched at the successful litigant's expense."[6]

Fees may be awarded under the common fund exception if "(a) the claim was merito-

---

**5.** *Korn v. New Castle County,* 2006 WL 588041 at *2 (Del.Ch.)

**6.** *Dover Historical Society, Inc. v. City of Dover Planning Commission,* 902 A.2d 1084, 1090 (Del.2006) (Citations omitted.).

rious when filed; (b) the action [benefitted an identifiable group]; and (c) the benefit was casually related to the lawsuit."[7] There is a rebuttable presumption that the benefit was casually related to the lawsuit if the defendant takes action to moot the claim after the complaint is filed.[8]

In *Dover Historical Society*[9], a community organization successfully sued the Dover Planning Commission, alleging that the Commission improperly approved a proposed development project that would result in the demolition of several historical buildings. This Court noted that the Society "clearly created a social benefit" by causing the Commission to do its job properly.[10] Nonetheless, we held that the Society was not entitled to a fee award because such a social benefit does not justify an exception to the traditional rule that each party must pay its own fees.

■ In this case, Korn did more than merely achieve the social benefit that invariably results when a government agency is required to do its job. Korn's litigation also created a substantial and quantifiable monetary benefit to all taxpayers, although not to the extent Korn asserts. We agree with the trial court that the abandonment of the original $80 million bond sale cannot be considered a monetary benefit for purposes of a fee award. The County used its surplus funds in lieu of bond money to pay for scheduled projects. The surplus funds were generating income. If those funds were preserved, especially in light of rising interest rates, the income they would have generated might have equaled the debt service on the abandoned bond sale.

Thus, the bond sale "savings" are too speculative to be considered in evaluating Korn's application for fees.

■ The Light Tax Fund surplus, by contrast, was used to reduce all taxpayers' light tax rate. Korn's amended complaint raised a meritorious claim that the Light Tax Fund surplus was unlawful. The claim was mooted when the County took corrective action, namely, applying the surplus to the calculation of the next year's light tax rate. The County, thus, "returned" approximately $540,000 to the taxpayers—a tangible benefit that is both substantial and quantifiable. The taxpayers who received that benefit should, as a matter of equity, share the attorneys' fees incurred to obtain it. The amount of the fees, however, must be reasonable in relation to the benefit conferred. The Court of Chancery did not address the reasonableness of Korn's request for fees, since it determined that no fee award was warranted. Accordingly, we must remand for the Court of Chancery to determine an appropriate fee award.

### Conclusion

Based on the foregoing, the decision of the Court of Chancery is reversed and this matter is remanded for further action in accordance with this opinion. Jurisdiction is not retained.

7. *Tandycrafts, Inc. v. Initio Partners*, 562 A.2d 1162, 1167 (Del.1989).

8. *United Vanguard Fund, Inc. v. Takecare, Inc.*, 693 A.2d 1076, 1079 (Del.1997).

9. 902 A.2d 1084 (Del.2006).

10. *Id.* at 1091.