COURT OF CHANCERY

 OF THE

 STATE OF DELAWARE

|Morgan T. Zurn | |Leonard L. Williams Justice |
|Vice Chancellor | |Center |
| | |500 N. King Street, Suite |
| | |11400 |
| | |Wilmington, Delaware |
| | |19801-3734 |
 September 15, 2023

|Michael J. Barry, Esquire |Raymond J. DiCamillo, Esquire |
|Grant & Eisenhofer P.A. |Richards, Layton & Finger, P.A. |
|123 Justison Street, 7th Floor |920 North King Street |
|Wilmington, DE 19801 |Wilmington, DE 19801 |
|Thomas Curry, Esquire |Gregory V. Varallo, Esquire |
|Saxena White P.A. |Bernstein Litowitz Berger & |
|824 North Market Street, Suite 1003 |Grossman LLP |
|Wilmington, DE 19801 |500 Delaware Avenue, Suite 901 |
| |Wilmington, DE 19801 |
|Theodore A. Kittila, Esquire |Anthony A. Rickey, Esquire |
|Halloran Farkas + Kittila LLP |Margrave Law LLC |
|5801 Kennett Pike, Suite C/D |3411 Silverside Road, Suite 104 |
|Wilmington, DE 19807 |Wilmington, DE 19810 |
 RE: In re AMC Entertainment Holdings, Inc. Stockholder Litigation,
 Consol. C.A. No. 2023-0215-MTZ

Dear Counsel and Ms. Izzo:

 I write to address objector Rose Izzo’s motion for an award of
attorneys’ fees.[1] For the below reasons, I award Izzo’s counsel
$212,700.00 in fees. I also approve Izzo’s request for a $3,000 incentive
fee, to be paid out of her counsel’s fee.

 A. Background

 The parties to this action sought approval of a class action
settlement that contemplated the payment of AMC Entertainment Holdings Inc.
(“AMC” or the “Company”) common stock to class members as consideration for
their release of certain claims (the “Settlement Shares”). At the time,
the plaintiffs’ counsel estimated the value of the Settlement Shares
exceeded $129 million.[2] They sought a fee of $20 million, or 15.5% of
this value.[3] Izzo appeared as an objector and asserted a flurry of
challenges to the proposed settlement, including that the requested fee
percentage was excessive.[4] She also argued that settlement approval
could have an adverse effect on the Company’s stock price, and so the award
of attorneys’ fees should be derived from a post-settlement approval
valuation of the Settlement Shares.[5] I approved the settlement and fixed
the fee percentage at 12%, to be applied upon issuance and valuation of the
Settlement Shares. [6]

 The Settlement Shares have since been issued. Pursuant to my
instructions, the parties agreed the value of the Settlement Shares to the
class was $47,992,395.54.[7] A 12% fee based on that figure totals
$5,759,087.46, representing a more than $14 million discount from the
original request.[8]

 Izzo now claims credit for that discount. She seeks $650,000 in
attorneys’ fees and a $3,000 incentive fee for Izzo to be paid out of her
counsel’s fee. The parties took no position on Izzo’s requests.[9]

 B. Analysis

 “[A] litigant or a lawyer who recovers a common fund for the benefit
of persons other than himself or his client is entitled to a reasonable
attorney’s fee from the fund as a whole.”[10] The Court has “considerable
discretion when deciding the appropriate fee award.”[11] In exercising
that discretion, the Court will apply the Sugarland factors, which include:
 “1) the results achieved; 2) the time and effort of counsel; 3) the
relative complexities of the litigation; 4) any contingency factor; and 5)
the standing and ability of counsel involved.”[12] The most important
factor is the benefit created by the litigant.[13]

 1. The Benefit Achieved

 I begin by determining whether Izzo was responsible for the reduction
in attorneys’ fees. As stated, the plaintiffs’ counsel originally
requested a fee equal to 15.5% of the value of the Settlement Shares, which
the plaintiffs estimated exceeded $129 million. Izzo advocated for that
percentage to be cut to 10%, and for the valuation of the Settlement Shares
to be reduced. I ultimately awarded 12% of the value of the Settlement
Shares at the time they were paid. The market, and so the parties, valued
the Settlement Shares at substantially less than Plaintiffs’ counsel had
predicted. The lower percentage, and more significantly the lower value,
resulted in a considerable fee reduction. Izzo argues that she contributed
to this reduction in three ways.

 First, Izzo takes credit for the decision to defer valuing the
Settlement Shares until they were issued to the class. Her objection
argued that AMC’s retail stockholder base would consider the consummation
of the settlement agreement as a “betrayal” and divest their holdings,
causing the market price to “tumble.”[14] Izzo argued that the plaintiffs’
counsel should bear some of this particular risk, suggesting that “the most
easily administrable solution would be to rule first on the Settlement and
then, if it becomes final, address Plaintiffs’ fee petition after the
[conversion of preferred shares into common].”[15]

 I found, and still find, Izzo’s reasoning to delay valuing the
settlement consideration unpersuasive—she proffered no evidence to support
her predicted mass exodus of aggrieved retail investors and a resulting
material impact on AMC’s common stock price.[16] I decided to defer
valuation of the Settlement Shares and therefore the fee, but for different
reasons. Having found there was no need to definitively value the
Settlement Shares for purposes of settlement approval, I deferred valuation
of the Settlement Shares until the time they were issued to the class. As
I explained in approving the settlement:

 Under these circumstances, speculating as to the future value of a
 share of AMC common stock makes little sense. I leave it to the
 parties to confer on the value of the Settlement Shares as
 crystallized at the time those shares are issued, and on what 12% of
 that value represents. The parties should derive Plaintiffs’
 counsel’s fee from the closing price of AMC common stock on the date
 Settlement Shares are issued.[17]

Izzo’s objection on this point was not helpful, and the fact we reached the
same conclusion alone does not warrant an award of attorneys’ fees.[18]

 Second, Izzo argued that the settlement was an early-stage settlement,
meriting a fee award of 10% to 15%. In determining that the plaintiffs’
fee request was excessive, I explained that “[w]hile the settlement
followed highly expedited written and document discovery, the settlement is
still an early-stage settlement” and that “[t]he most justifiable ‘paid
separately’ percentage is 13%.”[19] Again, Izzo and I reached the same
conclusion, but her argument was too underdeveloped to be persuasive or
useful.

 Third, Izzo alerted the Court to the existence of Seb Investment
Management AB v. Symantec Corp., a California decision that addressed
concerns that the plaintiffs’ counsel and their client in that case
“engaged in a play to pay.”[20] There, the District Court for the Northern
District of California ordered the parties to allow class members a new
opportunity to opt out of the class after finding “no clear-cut evidence of
a quid pro quo emerged, [though] discovery did show that [Bernstein
Litowitz Berger & Grossman LLP’s] initial explanation to the Court proved
misleading.”[21] It held that “in future cases, [Bernstein Litowitz
Berger & Grossman LLP] in seeking appointment as class counsel shall bring
this order to the attention of the assigned judge and the decision-maker
for the lead plaintiff who is to select counsel.”[22] The plaintiffs’
counsel failed to bring this ruling to my attention, and I considered this
fact in my consideration of counsel’s standing.[23]

 Together, several factors weighing on the plaintiffs’ counsel’s
standing resulted in a 0.5% reduction in their fee award. That 0.5%
reduction reflects savings of $239,961.98. I expressly considered three
separate inputs to that downward adjustment, of which the nondisclosure of
the California case was one. Thus, I conclude that Izzo was responsible
for one third, or $79,987.33, of the resulting reduction.

 2. The Secondary Sugarland Factors

 I now turn to the secondary Sugarland factors as applied to that
benefit to the class and AMC. “Secondary factors include the complexity of
the litigation, the standing and skill of counsel, and the contingent
nature of the fee arrangement together with the level of contingency risk
actually involved in the case.”[24]

 In my August 11 decision, I explained that “[t]his litigation was both
complex and challenging,” and that the plaintiffs “filed claims applying a
novel legal theory, crafted in a changing legal landscape, to sophisticated
financial engineering.”[25] Izzo was faced with substantially similar
legal challenges, and the complexity of the litigation warrants an upward
adjustment.[26] Izzo’s counsel, who are known to and respected by this
Court, undertook this representation on a contingency fee basis.

 I find that a one-third contingency fee is appropriate.[27] Applying
a one-third contingency fee to the $79,987.33 benefit Izzo caused entitles
Izzo to an award of approximately $27,700.00.

 3. Additional Benefits

 But Izzo’s counsel did more than secure a benefit for the class: they
were helpful to the Court. When a case settles, the parties seeking
approval of their settlement drop their adversarial weapons and work
together towards the common goal of securing settlement approval. This one-
handed clapping makes it more difficult for the Court to ensure that the
proposed settlement is fair. Objectors can assist the Court by
scrutinizing the parties’ agreement and identifying issues that might
betray its unfairness to absent class members.[28]

 In most circumstances, even where an objector offers such assistance,
her counsel is typically entitled to fees only where “his efforts improved
the final settlement or he conferred a benefit on the class.”[29] But in
“a very rare case . . . an objector will be awarded a fee on the basis
that he did benefit the class by substantially assisting the court in its
evaluation of the proposed settlement.”[30]

 This is one of those very rare cases. The parties reached their
settlement and urged expedited approval before the discovery record was
presented to the Court, and the absent class members were vocal and diverse
and unrepresented. Izzo’s work provided the adversarial perspective of
Delaware attorneys on an expedited and complex settlement that posed
several novel procedural and substantive difficulties. Izzo’s counsel
fought for access to and then reviewed the discovery record, filed a
comprehensive and multifaceted objection, took exceptions to the Special
Master’s report and recommendation, and zealously advocated for her many
positions at the hearing. To be sure, some of her challenges were weak,
and served more as a distraction rather than a helpful check on the merits
of the settlement.[31] Nevertheless, it is clear that Izzo took a serious,
thorough look into the merits, which were far from straightforward.

 And Izzo weighed in on not only the merits of the settlement, but also
other issues the Court had to address on the path to the merits. She
offered represented advocacy on objector access to discovery[32] and the
withdrawal of one of the representative plaintiffs.[33]

 Under these rare circumstances, and gauging the extent to which Izzo’s
work was helpful to the Court, the forgoing warrants a fee award of
$185,000.00, equal to around two-thirds of her counsel’s lodestar of
$277,960.00.[34]

 This leaves the question of who should pay that fee. Izzo did not
suggest who should pay, and her proposed order leaves the question
open.[35] When Izzo presented her motion to the parties, they took no
position. Izzo’s counsel’s advocacy was helpful to the Court in part due
to the lack of adversarial advocacy between the parties in the settlement
context. And so I believe it is fair, and within my discretion, to split
the objector’s fee between the defendants and the plaintiffs’ counsel.

 4. Izzo’s Incentive Fee

 Izzo has requested an incentive fee of $3,000 to be paid out of any
fee award to her counsel. The Court may grant incentive awards to
representative plaintiffs where justified by the factors identified in
Raider v. Sunderland: (i) the “time, effort and expertise expended by the
class representative,” and (ii) the “benefit to the class.”[36] She points
out she was an active litigant, attended the settlement hearing, and, like
the representative plaintiffs, “endured an unusual level of
harassment.”[37] As explained in my August 11 decision, this was a
difficult case for all involved.[38] Under the unique circumstances of
this case, Izzo’s requested fee is warranted.

 C. Conclusion

 Izzo’s counsel is entitled to a fee award of $27,700.00 for the
reduction in attorneys’ fees, to be paid by the Company. Her counsel is
also entitled to $185,000.00, to be split between the defendants and
plaintiffs’ counsel.[39] Izzo is to be paid an incentive fee of $3,000
from that amount. To the extent an order is necessary, IT IS SO ORDERED.

 Sincerely,
 /s/ Morgan T. Zurn

 Vice Chancellor

MTZ/ms

cc: All Counsel of Record, via File & ServeXpress

-----------------------
[1] Docket Item (“D.I.”) 655 at Mot.

[2] D.I. 206 at Op. Br. 30–31.

[3] Id. at 51, 57.

[4] D.I. 450 at Corrected Transmittal Aff. of Thomas Curry in Support of
Pls.’ Reply in Further Supp. of Settlement, Award of Att’ys’ Fees and
Expenses, and Incentive Awards, Ex. 2 at 53–54 [hereinafter “Izzo Obj.”].

[5] Id. at 47–48.

[6] In re AMC Ent. Hldgs., Inc. S’holder Litig., 2023 WL 5165606, at *40
(Del. Ch. Aug. 11, 2023). The August 11 opinion is also available at
docket item 615. For a more complete recitation of the brief yet extensive
history of this litigation, I refer readers to my July 22 and August 11
opinions in this matter. In re AMC Ent. Hldgs., Inc. S’holder Litig., —
A.3d —, 2023 WL 4677722 (Del. Ch. July 21, 2023); In re AMC, 2023 WL
5165606. The July 21 opinion is also available at docket item 581.

[7] D.I. 663 at 3.

[8] Id. ¶ 1.

[9] D.I. 658, Ex. A.

[10] Americas Mining Corp. v. Theriault, 51 A.3d 1213, 1252–53 (Del. 2012)
(internal quotation marks omitted) (quoting Boeing Co. v. Van Gemert, 444
U.S. 472, 478 (1980)); Korn v. New Castle Cnty., 922 A.2d 409, 412 (Del.
2007) (“The ‘common fund’ exception enables a litigant who succeeds in
conferring a monetary benefit upon an ascertainable class of individuals to
recover costs from the fund that he or she created.”).

[11] Griffith v. Stein ex rel. Goldman Sachs Grp., Inc., 283 A.3d 1124,
1139 (Del. 2022).

[12] Americas Mining, 51 A.3d at 1254.

[13] Id. (“Delaware courts have assigned the greatest weight to the benefit
achieved in litigation.”).

[14] Izzo Obj. 47.

[15] Id. at 48.

[16] This is true notwithstanding the fact that AMC’s common stock price
declined following settlement approval.

[17] In re AMC, 2023 WL 5165606, at *40.

[18] Griffith, 283 A.3d at 1139.

[19] In re AMC, 2023 WL 5165606, at *37 (quoting In re Dell Techs. Inc.
Class V S’holders Litig., 2023 WL 4864861, at *34 (Del. Ch. July 31,
2023)).

[20] Seb Inv. Mgmt. AB v. Symantec Corp., 2021 WL 1540996, at *1 (N.D. Cal.
Apr. 20, 2021).

[21] Id. at *2.

[22] Id.

[23] In re AMC, 2023 WL 5165606, at *39.

[24] Judy v. Preferred Commc’n Sys., Inc., 2016 WL 4992687, at *15 (Del.
Ch. Sept. 19, 2016).

[25] In re AMC, 2023 WL 5165606, at *38.

[26] In re Activision Blizzard, Inc. S’holder Litig., 124 A.3d 1025, 1072
(Del. Ch. 2015) (“All else equal, litigation that is challenging and
complex supports a higher fee award.”).

[27] See Stein v. Blankfein, 2019 WL 2750100, at *2 (Del. Ch. July 1,
2019).

[28] See In re Amsted Indus. Inc. Litig., 1988 WL 92736, at *11 (Del. Ch.
Aug. 24, 1988) (“This effort, while it failed to win acceptance of his
position, contributed to the class in increasing the assurance that a fair
compromise had been reached.”), aff’d sub nom. Barkan v. Amsted Indus.,
Inc., 567 A.2d 1279 (Del. 1989).

[29] Schultz v. Ginsburg, 965 A.2d 661, 670–71 (Del. 2009), overruled on
other grounds by Urdan v. WR Cap. P’rs, LLC, 244 A.3d 668 (Del. 2020).

[30] Amsted Indus., 1988 WL 92736, at *12; see also In re Riverbed Tech.,
Inc. S’holders Litig., 2015 WL 7769861, at *3 (Del. Ch. Dec. 2, 2015).

[31] See, e.g., Izzo Obj. 13–19 (explaining why each representative
plaintiff is not an “Ape”).

[32] D.I. 311 at Ltr.

[33] D.I. 357 at Response.

[34] D.I. 655 at Mot. ¶ 27.

[35] D.I. 655 at Proposed Order ¶ 3.

[36] Raider v. Sunderland, 2006 WL 75310, at *2 (Del. Ch. Jan. 4, 2006).

[37] D.I. 655 at Mot. ¶ 31.

[38] In re AMC, 2023 WL 5165606, at *41 n.367 (explaining the requested
$5,000 incentive fees may be low considering, among other things,
“Plaintiffs, like their counsel and the Court, were subject to an unusual
level of harassment from the time of filing the complaints throughout this
settlement process”).

[39] Izzo did not separately request expenses, and so no separate award of
expenses will be issued.