COURT OF CHANCERY
OF THE
STATE OF DELAWARE

MORGAN T. ZURN
VICE CHANCELLOR

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 11400
WILMINGTON, DELAWARE 19801-3734

September 15, 2023

Michael J. Barry, Esquire
Grant & Eisenhofer P.A.
123 Justison Street, 7th Floor
Wilmington, DE 19801

Raymond J. DiCamillo, Esquire
Richards, Layton & Finger, P.A.
920 North King Street
Wilmington, DE 19801

Thomas Curry, Esquire
Saxena White P.A.
824 North Market Street, Suite 1003
Wilmington, DE 19801

Gregory V. Varallo, Esquire
Bernstein Litowitz Berger & Grossman LLP
500 Delaware Avenue, Suite 901
Wilmington, DE 19801

Theodore A. Kittila, Esquire
Halloran Farkas + Kittila LLP
5801 Kennett Pike, Suite C/D
Wilmington, DE 19807

Anthony A. Rickey, Esquire
Margrave Law LLC
3411 Silverside Road, Suite 104
Wilmington, DE 19810

RE: *In re AMC Entertainment Holdings, Inc. Stockholder Litigation,*
Consol. C.A. No. 2023-0215-MTZ

Dear Counsel and Ms. Izzo:

I write to address objector Rose Izzo's motion for an award of attorneys' fees.[1]  For the below reasons, I award Izzo's counsel $212,700.00 in fees.  I also approve Izzo's request for a $3,000 incentive fee, to be paid out of her counsel's fee.

### A.    Background

The parties to this action sought approval of a class action settlement that contemplated the payment of AMC Entertainment Holdings Inc. ("AMC" or the "Company") common stock to class members as consideration for their release of certain claims (the "Settlement Shares").  At the time, the plaintiffs' counsel

---

[1] Docket Item ("D.I.") 655 at Mot.

estimated the value of the Settlement Shares exceeded $129 million.[2] They sought a fee of $20 million, or 15.5% of this value.[3] Izzo appeared as an objector and asserted a flurry of challenges to the proposed settlement, including that the requested fee percentage was excessive.[4] She also argued that settlement approval could have an adverse effect on the Company's stock price, and so the award of attorneys' fees should be derived from a post-settlement approval valuation of the Settlement Shares.[5] I approved the settlement and fixed the fee percentage at 12%, to be applied upon issuance and valuation of the Settlement Shares.[6]

The Settlement Shares have since been issued. Pursuant to my instructions, the parties agreed the value of the Settlement Shares to the class was $47,992,395.54.[7] A 12% fee based on that figure totals $5,759,087.46, representing a more than $14 million discount from the original request.[8]

Izzo now claims credit for that discount. She seeks $650,000 in attorneys' fees and a $3,000 incentive fee for Izzo to be paid out of her counsel's fee. The parties took no position on Izzo's requests.[9]

---

[2] D.I. 206 at Op. Br. 30–31.

[3] *Id.* at 51, 57.

[4] D.I. 450 at Corrected Transmittal Aff. of Thomas Curry in Support of Pls.' Reply in Further Supp. of Settlement, Award of Att'ys' Fees and Expenses, and Incentive Awards, Ex. 2 at 53–54 [hereinafter "Izzo Obj."].

[5] *Id.* at 47–48.

[6] *In re AMC Ent. Hldgs., Inc. S'holder Litig.*, 2023 WL 5165606, at *40 (Del. Ch. Aug. 11, 2023). The August 11 opinion is also available at docket item 615. For a more complete recitation of the brief yet extensive history of this litigation, I refer readers to my July 22 and August 11 opinions in this matter. *In re AMC Ent. Hldgs., Inc. S'holder Litig.*, — A.3d —, 2023 WL 4677722 (Del. Ch. July 21, 2023); *In re AMC*, 2023 WL 5165606. The July 21 opinion is also available at docket item 581.

[7] D.I. 663 at 3.

[8] *Id.* ¶ 1.

[9] D.I. 658, Ex. A.

## B. Analysis

"[A] litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole."[10]   The Court has "considerable discretion when deciding the appropriate fee award."[11]   In exercising that discretion, the Court will apply the *Sugarland* factors, which include:  "1) the results achieved; 2) the time and effort of counsel; 3) the relative complexities of the litigation; 4) any contingency factor; and 5) the standing and ability of counsel involved."[12]   The most important factor is the benefit created by the litigant.[13]

### 1. The Benefit Achieved

I begin by determining whether Izzo was responsible for the reduction in attorneys' fees.  As stated, the plaintiffs' counsel originally requested a fee equal to 15.5% of the value of the Settlement Shares, which the plaintiffs estimated exceeded $129 million.  Izzo advocated for that percentage to be cut to 10%, and for the valuation of the Settlement Shares to be reduced.  I ultimately awarded 12% of the value of the Settlement Shares at the time they were paid.  The market, and so the parties, valued the Settlement Shares at substantially less than Plaintiffs' counsel had predicted. The lower percentage, and more significantly the lower value, resulted in a considerable fee reduction.  Izzo argues that she contributed to this reduction in three ways.

First, Izzo takes credit for the decision to defer valuing the Settlement Shares until they were issued to the class.  Her objection argued that AMC's retail stockholder base would consider the consummation of the settlement agreement as

---

[10] *Americas Mining Corp. v. Theriault*, 51 A.3d 1213, 1252–53 (Del. 2012) (internal quotation marks omitted) (quoting *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980)); *Korn v. New Castle Cnty.*, 922 A.2d 409, 412 (Del. 2007) ("The 'common fund' exception enables a litigant who succeeds in conferring a monetary benefit upon an ascertainable class of individuals to recover costs from the fund that he or she created.").

[11] *Griffith v. Stein ex rel. Goldman Sachs Grp., Inc.*, 283 A.3d 1124, 1139 (Del. 2022).

[12] *Americas Mining*, 51 A.3d at 1254.

[13] *Id.* ("Delaware courts have assigned the greatest weight to the benefit achieved in litigation.").

a "betrayal" and divest their holdings, causing the market price to "tumble."[14] Izzo argued that the plaintiffs' counsel should bear some of this particular risk, suggesting that "the most easily administrable solution would be to rule first on the Settlement and then, if it becomes final, address Plaintiffs' fee petition after the [conversion of preferred shares into common]."[15]

I found, and still find, Izzo's reasoning to delay valuing the settlement consideration unpersuasive—she proffered no evidence to support her predicted mass exodus of aggrieved retail investors and a resulting material impact on AMC's common stock price.[16] I decided to defer valuation of the Settlement Shares and therefore the fee, but for different reasons. Having found there was no need to definitively value the Settlement Shares for purposes of settlement approval, I deferred valuation of the Settlement Shares until the time they were issued to the class. As I explained in approving the settlement:

> Under these circumstances, speculating as to the future value of a share of AMC common stock makes little sense. I leave it to the parties to confer on the value of the Settlement Shares as crystallized at the time those shares are issued, and on what 12% of that value represents. The parties should derive Plaintiffs' counsel's fee from the closing price of AMC common stock on the date Settlement Shares are issued.[17]

Izzo's objection on this point was not helpful, and the fact we reached the same conclusion alone does not warrant an award of attorneys' fees.[18]

Second, Izzo argued that the settlement was an early-stage settlement, meriting a fee award of 10% to 15%. In determining that the plaintiffs' fee request was excessive, I explained that "[w]hile the settlement followed highly expedited written and document discovery, the settlement is still an early-stage settlement"

---

[14] Izzo Obj. 47.

[15] *Id.* at 48.

[16] This is true notwithstanding the fact that AMC's common stock price declined following settlement approval.

[17] *In re AMC*, 2023 WL 5165606, at *40.

[18] *Griffith*, 283 A.3d at 1139.

and that "[t]he most justifiable 'paid separately' percentage is 13%."[19]  Again, Izzo and I reached the same conclusion, but her argument was too underdeveloped to be persuasive or useful.

Third, Izzo alerted the Court to the existence of *Seb Investment Management AB v. Symantec Corp.*, a California decision that addressed concerns that the plaintiffs' counsel and their client in that case "engaged in a play to pay."[20]  There, the District Court for the Northern District of California ordered the parties to allow class members a new opportunity to opt out of the class after finding "no clear-cut evidence of a quid pro quo emerged, [though] discovery did show that [Bernstein Litowitz Berger & Grossman LLP's] initial explanation to the Court proved misleading."[21]  It held that "in future cases, [Bernstein Litowitz Berger & Grossman LLP] in seeking appointment as class counsel shall bring this order to the attention of the assigned judge and the decision-maker for the lead plaintiff who is to select counsel."[22]  The plaintiffs' counsel failed to bring this ruling to my attention, and I considered this fact in my consideration of counsel's standing.[23]

Together, several factors weighing on the plaintiffs' counsel's standing resulted in a 0.5% reduction in their fee award.  That 0.5% reduction reflects savings of $239,961.98.  I expressly considered three separate inputs to that downward adjustment, of which the nondisclosure of the California case was one.  Thus, I conclude that Izzo was responsible for one third, or $79,987.33, of the resulting reduction.

### 2.    The Secondary *Sugarland* Factors

I now turn to the secondary *Sugarland* factors as applied to that benefit to the class and AMC.  "Secondary factors include the complexity of the litigation,

---

[19] *In re AMC*, 2023 WL 5165606, at *37 (quoting *In re Dell Techs. Inc. Class V S'holders Litig.*, 2023 WL 4864861, at *34 (Del. Ch. July 31, 2023)).

[20] *Seb Inv. Mgmt. AB v. Symantec Corp.*, 2021 WL 1540996, at *1 (N.D. Cal. Apr. 20, 2021).

[21] *Id.* at *2.

[22] *Id.*

[23] *In re AMC*, 2023 WL 5165606, at *39.

the standing and skill of counsel, and the contingent nature of the fee arrangement together with the level of contingency risk actually involved in the case."[24]

In my August 11 decision, I explained that "[t]his litigation was both complex and challenging," and that the plaintiffs "filed claims applying a novel legal theory, crafted in a changing legal landscape, to sophisticated financial engineering."[25] Izzo was faced with substantially similar legal challenges, and the complexity of the litigation warrants an upward adjustment.[26] Izzo's counsel, who are known to and respected by this Court, undertook this representation on a contingency fee basis.

I find that a one-third contingency fee is appropriate.[27] Applying a one-third contingency fee to the $79,987.33 benefit Izzo caused entitles Izzo to an award of approximately $27,700.00.

### 3.    Additional Benefits

But Izzo's counsel did more than secure a benefit for the class:  they were helpful to the Court.  When a case settles, the parties seeking approval of their settlement drop their adversarial weapons and work together towards the common goal of securing settlement approval.  This one-handed clapping makes it more difficult for the Court to ensure that the proposed settlement is fair.  Objectors can assist the Court by scrutinizing the parties' agreement and identifying issues that might betray its unfairness to absent class members.[28]

---

[24] *Judy v. Preferred Commc'n Sys., Inc.*, 2016 WL 4992687, at *15 (Del. Ch. Sept. 19, 2016).

[25] *In re AMC*, 2023 WL 5165606, at *38.

[26] *In re Activision Blizzard, Inc. S'holder Litig.*, 124 A.3d 1025, 1072 (Del. Ch. 2015) ("All else equal, litigation that is challenging and complex supports a higher fee award.").

[27] *See Stein v. Blankfein*, 2019 WL 2750100, at *2 (Del. Ch. July 1, 2019).

[28] *See In re Amsted Indus. Inc. Litig.*, 1988 WL 92736, at *11 (Del. Ch. Aug. 24, 1988) ("This effort, while it failed to win acceptance of his position, contributed to the class in increasing the assurance that a fair compromise had been reached."), *aff'd sub nom. Barkan v. Amsted Indus., Inc.*, 567 A.2d 1279 (Del. 1989).

In most circumstances, even where an objector offers such assistance, her counsel is typically entitled to fees only where "his efforts improved the final settlement or he conferred a benefit on the class."[29]  But in "a very rare case . . . an objector will be awarded a fee on the basis that he did benefit the class by substantially assisting the court in its evaluation of the proposed settlement."[30]

This is one of those very rare cases.  The parties reached their settlement and urged expedited approval before the discovery record was presented to the Court, and the absent class members were vocal and diverse and unrepresented.  Izzo's work provided the adversarial perspective of Delaware attorneys on an expedited and complex settlement that posed several novel procedural and substantive difficulties.  Izzo's counsel fought for access to and then reviewed the discovery record, filed a comprehensive and multifaceted objection, took exceptions to the Special Master's report and recommendation, and zealously advocated for her many positions at the hearing.  To be sure, some of her challenges were weak, and served more as a distraction rather than a helpful check on the merits of the settlement.[31]  Nevertheless, it is clear that Izzo took a serious, thorough look into the merits, which were far from straightforward.

And Izzo weighed in on not only the merits of the settlement, but also other issues the Court had to address on the path to the merits.  She offered represented advocacy on objector access to discovery[32] and the withdrawal of one of the representative plaintiffs.[33]

---

[29] *Schultz v. Ginsburg*, 965 A.2d 661, 670–71 (Del. 2009), *overruled on other grounds by Urdan v. WR Cap. P'rs, LLC*, 244 A.3d 668 (Del. 2020).

[30] *Amsted Indus.*, 1988 WL 92736, at \*12; *see also In re Riverbed Tech., Inc. S'holders Litig.*, 2015 WL 7769861, at \*3 (Del. Ch. Dec. 2, 2015).

[31] *See, e.g.*, Izzo Obj. 13–19 (explaining why each representative plaintiff is not an "Ape").

[32] D.I. 311 at Ltr.

[33] D.I. 357 at Response.

Under these rare circumstances, and gauging the extent to which Izzo's work was helpful to the Court, the forgoing warrants a fee award of $185,000.00, equal to around two-thirds of her counsel's lodestar of $277,960.00.[34]

This leaves the question of who should pay that fee. Izzo did not suggest who should pay, and her proposed order leaves the question open.[35] When Izzo presented her motion to the parties, they took no position. Izzo's counsel's advocacy was helpful to the Court in part due to the lack of adversarial advocacy between the parties in the settlement context. And so I believe it is fair, and within my discretion, to split the objector's fee between the defendants and the plaintiffs' counsel.

### 4. Izzo's Incentive Fee

Izzo has requested an incentive fee of $3,000 to be paid out of any fee award to her counsel. The Court may grant incentive awards to representative plaintiffs where justified by the factors identified in *Raider v. Sunderland*: (i) the "time, effort and expertise expended by the class representative," and (ii) the "benefit to the class."[36] She points out she was an active litigant, attended the settlement hearing, and, like the representative plaintiffs, "endured an unusual level of harassment."[37] As explained in my August 11 decision, this was a difficult case for all involved.[38] Under the unique circumstances of this case, Izzo's requested fee is warranted.

### C. Conclusion

Izzo's counsel is entitled to a fee award of $27,700.00 for the reduction in attorneys' fees, to be paid by the Company. Her counsel is also entitled to

---

[34] D.I. 655 at Mot. ¶ 27.

[35] D.I. 655 at Proposed Order ¶ 3.

[36] *Raider v. Sunderland*, 2006 WL 75310, at *2 (Del. Ch. Jan. 4, 2006).

[37] D.I. 655 at Mot. ¶ 31.

[38] *In re AMC*, 2023 WL 5165606, at *41 n.367 (explaining the requested $5,000 incentive fees may be low considering, among other things, "Plaintiffs, like their counsel and the Court, were subject to an unusual level of harassment from the time of filing the complaints throughout this settlement process").

$185,000.00, to be split between the defendants and plaintiffs' counsel.[39] Izzo is to be paid an incentive fee of $3,000 from that amount. To the extent an order is necessary, **IT IS SO ORDERED.**

Sincerely,

*/s/ Morgan T. Zurn*

Vice Chancellor

MTZ/ms

cc:    All Counsel of Record, via *File & ServeXpress*

---

[39] Izzo did not separately request expenses, and so no separate award of expenses will be issued.