# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

|  |  |  |
|---|---|---|
| IN RE ACTIVISION BLIZZARD, INC. | ) ) ) | C.A. No. 2024-0466-KSJM |

## MEMORANDUM OPINION

Date Submitted: November 25, 2024
Date Decided: May 2, 2025

Elena C. Norman, Daniel M. Kirshenbaum, Y. Carson Zhou, Kevin P. Rickert, YOUNG CONAWAY STARGATT & TAYLOR, LLP, Wilmington, Delaware; Stephen L. Ascher, Elizabeth A. Edmondson, JENNER & BLOCK, LLP, New York, New York; Benjamin T. Halbig, JENNER & BLOCK, LLP, San Francisco, California; *Counsel for Petitioners Microsoft Corporation and Activision Blizzard, Inc.*

Edward B. Micheletti, Lauren N. Rosenello, Michelle L. Davis, Claire K. Atwood, SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP, Wilmington, Delaware; *Counsel for Petitioner Activision Blizzard, Inc.*

Michael Hanrahan, Corinne Elise Amato, Kevin H. Davenport, Stacey A. Greenspan, Christine N. Chappelear, Kirsten M. Valania, PRICKETT, JONES, & ELLIOTT, P.A, Wilmington, Delaware; Lee D. Rudy, Eric L. Zagar, J. Daniel Albert, Lauren Lummus, KESSLER TOPAZ MELTZER & CHECK, LLP, Radnor, Pennsylvania; *Counsel for Intervenor Sjunde AP-fonden.*

**McCORMICK, C.**

The petitioners filed this action under Section 205 of the Delaware General Corporation Law seeking judicial validation of their merger. In a parallel suit, a stockholder of the target corporation claimed that the merger violated multiple provisions of the Delaware General Corporation Law. At the pleading stage, the court found those claims reasonably conceivable and denied the defendants' motion to dismiss. The court observed in the dismissal decision that the petitioners could seek judicial ratification under Section 205 to validate the merger. The petitioners filed this action for that purpose, and the court entered an order validating the merger. The stockholder's counsel then sought a mootness fee for causing a corporate benefit. This decision awards $2.5 million in fees.

## I. FACTUAL BACKGROUND

This action is an offshoot of a plenary action (the "Plenary Action"), where a former stockholder of Activision Blizzard, Inc. (the "Stockholder Plaintiff") asserts statutory and fiduciary claims challenging a merger between Microsoft Corporation and Activision (the "Merger").[1] The parties to the Plenary Action agreed to bifurcate the statutory claims from the other issues, and the defendants moved to dismiss the statutory claims.[2] The court denied the motion. In that ruling, the court concluded that it was reasonably conceivable that the defendants violated multiple provisions

---

[1] The Plenary Action is captioned *Sjunde AP-fonden v. Activision Blizzard, Inc. et al.*, C.A. No. 2022-1001-KSJM.

[2] C.A. No. 2022-1001-KSJM Docket ("Dkt.") 171 (Third Amended Complaint).

of the Delaware General Corporation Law (the "DGCL") governing board negotiation and board and stockholder approval of merger agreements.[3]

The court observed that the parties could avail themselves of Section 205 of the DGCL to eliminate any concerns that the Merger was invalid due to the alleged statutory violations.[4] That suggestion prompted Microsoft and Activision (together, "Petitioners") to file this action. The Stockholder Plaintiff intervened to ensure that Petitioners' requested relief did not interfere with the Stockholder Plaintiff's still-pending claims in the Plenary Action.[5] The parties took discovery and ultimately stipulated to a resolution of this action.[6]

The parties agreed that validation under Section 205 was warranted and would fully resolve the statutory claims in the Plenary Action. They also agreed that the Section 205 validation would not affect any of the Stockholder Plaintiff's still-pending claims in the Plenary Action.[7]

The court entered the stipulation as an order thereby validating the Merger (the "Section 205 Validation"), and the Stockholder Plaintiff's counsel moved for mootness fees for causing the benefits conferred by the Section 205 Validation.[8] The

---

[3] *Sjunde AP-fonden v. Activision Blizzard, Inc.*, 2024 WL 863290, at *4–10 (Del. Ch. Feb. 29, 2024), *as corrected* (Mar. 19, 2024).

[4] *Id.* at *10.

[5] C.A. No. 2024-0466-KSJM Dkt. 7.

[6] *Id.* Dkt. 26.

[7] *Id.* Dkt. 25.

[8] *Id.* Dkt. 27.

parties fully briefed the motion, and the court heard oral argument on November 24, 2024.[9]

## II.    LEGAL ANALYSIS

The Stockholder Plaintiff's counsel requests an all-in fee award of $15 million. Petitioners oppose that request on two grounds.  First, they say that the Stockholder Plaintiff's counsel is not entitled to any fee award.  Second, they argue that the amount requested is unreasonable.

### A.    Entitlement

"Delaware courts award fees to plaintiffs' counsel for the beneficial results they produced for the defendant corporation 'even without a favorable adjudication.'"[10] These circumstances include when "the defendants take some action that has the effect of mooting a derivative or class claim[.]"[11]  As a policy matter, awarding mootness fees "prevent[s] frustration of the remedial policy of providing professional compensation for such suits when meritorious[,]" ensuring that "even without a favorable adjudication, counsel will be compensated for the beneficial results they produced[.]"[12]

As the Delaware Supreme Court established in *United Vanguard Fund, Inc. v. TakeCare, Inc.*, a mootness fee based on the corporate benefit doctrine is warranted

---

[9] *Id.* Dkt. 46 ("Oral Arg. Tr.").

[10] *Garfield v. Boxed, Inc.*, 2022 WL 17959766, at *4 (Del. Ch. Dec. 27, 2022) (quoting *Allied Artists Pictures Corp. v. Baron*, 413 A.2d 876, 878 (Del. 1980)).

[11] *Grimes v. Donald,* 791 A.2d 818, 821 (Del. Ch. 2000), *aff'd,* 784 A.2d 1080 (Del. 2001).

[12] *Allied Artists*, 413 A.2d at 878.

3

when: "(1) the suit was meritorious when filed; (2) the action producing benefit to the corporation was taken by the defendants before a judicial resolution was achieved; and (3) the resulting corporate benefit was causally related to the lawsuit."[13] The vast majority of Delaware cases frame the standard in same or similar terms.[14]

---

[13] 693 A.2d 1076, 1079 (Del. 1997) (citing *Allied Artists,* 413 A.2d at 878).

[14] *See, e.g., Waterside P'rs v. C. Brewer & Co.*, 739 A.2d 768, 770 (Del. 1999) (similar); *Cal-Maine Foods, Inc. v. Pyles*, 858 A.2d 927, 929 (Del. 2004) (same); *Korn v. New Castle Cnty.,* 922 A.2d 409, 411 (Del. 2007) (similar); *Alaska Elec. Pension Fund v. Brown*, 988 A.2d 412, 417 (Del. 2010) (same); *EMAK Worldwide, Inc. v. Kurz*, 50 A.3d 429, 432 (Del. 2012) (similar); *In re Beatrice Co., Inc. Litig.*, 1986 WL 4749, at *7 (Del. Ch. Apr. 16, 1986), *aff'd,* 422 A.3d 865 (Del. 1987) (TABLE) (similar); *Greenfield v. Frank B. Hall & Co., Inc.,* 1992 WL 301348, at *3 (Del. Ch. Oct. 19, 1992) (similar); *BTZ, Inc. v. Nat'l Intergroup, Inc.*, 1993 WL 133211, at *2 (Del. Ch. Apr. 7, 1993) (similar); *Fisher v. Council of the Devon,* 1999 WL 1313661, at *2 (Del. Ch. Dec. 17, 1999) (same); *PaineWebber R&D P'rs II, L.P., v. Centocor, Inc.*, 2000 WL 130632, at *2 (Del. Ch. Jan. 31, 2000) (similar); *State of Wisconsin Inv. Bd. v. Bartlett*, 2002 WL 568417, at *4 (Del. Ch. Apr. 9, 2002), *aff'd,* 808 A.2d 1205 (Del. 2002) (TABLE) (same); *Belanger v. Fab Indus., Inc.,* 2004 WL 3030517, at *1 (Del. Ch. Dec. 29, 2004) (same); *In re Plains Res.*, 2005 WL 332811, at *2 (Del. Ch. Feb. 4, 2005) (same); *Off v. Ross,* 2009 WL 4725978, at *4 (Del. Ch. Dec. 10, 2009) (same); *eBay Domestic Hldgs., Inc. v. Newmark,* 16 A.3d 1, 48 (Del. Ch. 2010) (same); *San Antonio Fire & Police Pension Fund v. Bradbury,* 2010 WL 4273171, at *7 (Del. Ch. Oct. 28, 2010) (same); *In re Sauer-Danfoss Inc. S'holders Litig.*, 65 A.3d 1116, 1123 (Del. Ch. 2011) (same); *Frank v. Elgamal,* 2011 WL 3300344, at *2 (Del. Ch. July 28, 2011) (same); *In re Novell, Inc. S'holder Litig.*, 2011 WL 4091502, at *4 (Del. Ch. Aug. 30, 2011) (same); *Freedman v. Adams,* 2012 WL 1345638, *5 (Del. Ch. Mar. 30, 2012), *aff'd,* 58 A.3d 414 (Del. 2013) (same); *In re Quest Software Inc. S'holders Litig.*, 2013 WL 5978900, at *5 (Del. Ch. Nov. 12, 2013) (same); *Raul v. Astoria Fin. Corp.*, 2014 WL 2795312, at *5 (Del. Ch. June 20, 2014) (similar); *Sutherland v. Sutherland,* 2014 WL 3906500, at *3 (July 31, 2014) (same); *In re TPC Gp. Inc. S'holders Litig.*, 2014 WL 5500000, at *2 (Del. Ch. Oct. 29, 2014) (same); *City of Miami Gen. Empls.' and Sanitation Empls.' Ret. Tr. v. C&J Energy Servs., Inc.,* 250 A.3d 764, 770 (Del. Ch. 2018) (same); *Martin v. Harbor Diversified, Inc.*, 2020 WL 568971, at *2 (Del. Ch. Feb. 5, 2020), *aff'd,* 244 A.3d 682 (Del. 2020) (similar); *Hollywood Firefighters Pension Fund v. Malone,* 2021 WL 5179219, at *6 (Del. Ch. Nov. 8, 2021) (same); *Totta v. CCSB Fin. Corp.*, 2022 WL 16647972, at *1 (Del. Ch. Nov. 3, 2022), *aff'd,* 302 A.3d 387 (Del. 2023) (same); *Anderson v. Magellan Health, Inc.*, 298 A.3d 734, 740 (Del. Ch. 2023) (same); *Berger v. Adkins,* 2023 WL 5162408, at *2 (Del. Ch. Aug. 8, 2023) (same); *Allen v. Harvey,* 2023 WL 7122641, at *3 (Del. Ch. Oct. 30, 2023) (same); *Assad v. Botha,* 2023 WL

4

Mooting conduct gives rise to a rebuttable presumption of causation. That is, if a corporate defendant acts after a complaint is filed and that action renders the complaint moot, "Delaware law imposes on it the burden of persuasion to show that no causal connection existed between the initiation of the suit and any later benefit to shareholders."[15]

The Stockholder Plaintiff satisfied the three *TakeCare* criteria. The test for whether a claim was meritorious when filed is whether the claim "could withstand a motion to dismiss,"[16] and the statutory claims withstood a motion to dismiss.[17] The Section 205 Validation produced a benefit before judicial resolution of the Stockholder Plaintiff's statutory claims.[18] Petitioners do not rebut the presumption of causation.

Even so, Petitioners urge the court to deny the petition on four grounds. First, they say that the Stockholder Plaintiff cannot be compensated because Section 205 Validation did not accrue benefits for the putative class in the Plenary Action.[19] Second, they argue that awarding fees would be inequitable because the Stockholder Plaintiff "steadfastly fought validation."[20] Third, they contend that the Stockholder

---

7121419, at *3 (Del. Ch. Oct. 30, 2023) (same); *Crispo v. Musk,* 304 A.3d 567, 571–72 (Del. Ch. 2023) (same).

[15] *TakeCare*, 693 A.2d at 1080.

[16] *Allied Artists,* 413 A.2d at 879.

[17] *Activision,* 2024 WL 863290, at *10.

[18] *See* C.A. 2024-0466-KSJM Dkt. 1 ("Section 205 Petition") ¶ 2 (noting that in denying the motion dismiss, the court directed the parties to seek validation under Section 205 and that Petitioners "thus now seek the court's validation of the Merger").

[19] Dkt. 36 ("Petitioners' Answering Br.") at 23–24.

[20] *Id*. at 24–26.

5

Plaintiff can only claim credit for an outcome similar to the relief sought in the Plenary Action, in which the Stockholder Plaintiff sought to unwind the Merger not validate it.[21] Fourth, they challenge the propriety of awarding fees at what they describe as an "interim" stage.[22]

### 1. Compensable Benefit?

Petitioners argue that the Stockholder Plaintiff cannot receive a fee for the Section 205 Validation because the benefit did not accrue to the class of former Activision stockholders that the Stockholder Plaintiff purports to represent. According to Petitioners, if the former Activision stockholders did not benefit from the Section 205 Validation, then the Stockholder Plaintiff is not entitled to fees.

Petitioners' argument rests on a false factual premise—that the former Activision stockholders did not benefit from the Section 205 Validation. Petitioners represented the opposite to the court in their petition, stating that the former Activision stockholders would "face irreparable and significant harm" absent validation.[23]

Petitioners admit that they benefited from the Section 205 Validation. In their application, they represented that "[v]alidation under Section 205 is necessary to ensure that all parties receive the benefit of the Merger" because it would "provide needed certainty and eliminate prospective harm."[24] During oral argument, they

---

[21] *Id.* at 35–47.

[22] *Id.* at 32–35.

[23] Section 205 Petition at 40 ¶ 8.

[24] *Id.* ¶ 3.

6

conceded that they benefitted from the certainty of legal validity.[25] And obviously so. This court has recognized that "ensuring that the merger was statutorily sound is of value to stockholders,"[26] and "eliminating . . . risk[ ] by securing validation of a merger confer[s] a clear corporate benefit."[27] Even "*[c]onfirming* that a merger is compliant with the statute is itself an important benefit" for which this court has awarded mootness fees.[28]

Delaware law is not as inequitable or formalistic as Petitioners insist. The standard governing the allowance of attorneys' fees is "based on the historic power of the Court of Chancery to do equity."[29] The form of suit does not dictate eligibility for a fee award. "In Delaware, there is not a class action or derivative suit prerequisite . . . to an award of attorney's fees under the common benefit exception."[30] When assessing whether the common benefit exception applies, the court must determine, "whether a plaintiff, in bringing suit either individually, or representatively, has

---

[25] Oral Arg. Tr. at 37:4–15.

[26] *Malone,* 2021 WL 5179219, at *8 (cleaned up) (awarding $3.05 million in fees for mooting violations under 8 *Del. C.* § 203).

[27] *Cirillo Family Tr. v. Moezinia, et al.,* C.A. No. 10116-CB, at 37, 42 (Del. Ch. Feb. 19, 2019) (TRANSCRIPT) (cleaned up) (awarding $70,000 in fees for causing ratification, under 8 *Del. C.* § 205, which mooted claims under 8 *Del. C.* § 228).

[28] *Malone,* 2021 WL 5179219, at *8 (emphasis added); *see also Hawkes v. Bettino, et. al,* C.A. 2020-0360-PAF, at 103 (Del. Ch. Apr. 1, 2024) (TRANSCRIPT) ("Delaware law recognizes that corporate benefits to achieve statutory compliance . . . are some of the most important benefits that can be achieved through stockholder litigation[.]"); *Olson v. EV3, Inc.*, 2011 WL 704409, at *11 (Del. Ch. Feb. 11, 2011) (finding that confirming the validity of a merger conferred the "significant corporate benefit" of "defusing a corporate landmine" on the corporation and its stockholders).

[29] *Tandycrafts, Inc. v. Initio P'rs*, 562 A.2d 1162, 1166 (Del. 1989).

[30] *Goodrich v. E.F. Hutton Gp., Inc.,* 681 A.3d 1039, 1044 n.5 (Del. 1996).

7

conferred benefit on others."[31]   Where, as here, "there is no creation of a fund, yet a non-mandatory and 'therapeutic'  benefit, worthy of compensation, has been conferred . . . [t]he doctrine holds . . . that those who benefit should compensate whoever has caused the benefit."[32]  "[P]ersons who obtain the benefit of a lawsuit without contributing to its cost are unjustly enriched at the successful litigant's expense."[33]

Petitioners argue that the policy considerations animating the common benefit doctrine weigh against awarding fees in this context.  To Petitioners, fee-shifting in these circumstances harms the post-Merger stockholders.[34]  But the post-Merger entity received a benefit, as Petitioners concede.  Because Petitioners benefited from the Section 205 Validation, awarding fees prevents them from being unjustly enriched.  There is no injustice in having Petitioners pay the fees of those who caused the Section 205 Validation.

This court has awarded fees for mooting statutory defects in similar circumstances.[35]  In *Cirillo*, for example, former Chancellor Bouchard awarded fees for causing a judicial validation under Section 205 that mooted an alleged violation

---

[31] *Id.* (quoting *Tandycrafts,* 562 A.2d at 1166).

[32] *In re Dunkin' Donuts S'holders Litig.*, 1990 WL 189120, at *4 (Del. Ch. Nov. 27, 1990).

[33] *Boeing v. Co. Van Gemert¸*444 U.S. 472, 478 (1980).

[34] Petitioners' Answering Br. at 27.

[35] *See Cirillo*, at 39; *see also, Ryan v. Mindbody Inc. (Ryan II),* C.A. No. 2019-0061-KSJM (Del. Ch. Dec. 4, 2020) (TRANSCRIPT).

of Section 228 of the DGCL long after the merger closed.[36] In reaching this conclusion, the Chancellor stated:

> Bringing that problem to the defendants' attention clearly conferred a benefit. Perhaps if Cirillo had not identified the defects, no one else would have discovered it and this all would have been an academic point. Perhaps. But as this Court sees all too often, many strange things happen in the life of a corporation. And if this problem was discovered later, it had the potential to wreak havoc and cause enormous problems for DAVA and its owner, Endo, down the road, as it did in the litigation of this case. Eliminating those risks by securing validation of the merger conferred a clear corporate benefit to DAVA and its owner, Endo.[37]

The circumstances of this case align neatly with *Cirillo*, and the same logic applies here. In *Cirillo*, the cash-out merger allegedly violated Section 228; here, it is Section 251. In both cases, the defendants cleared the cloud of uncertainty caused by the statutory claims by seeking validation under Section 205 post closing. Just as the Section 205 validation in *Cirillo* eliminated "enormous problems" thus providing a "clear corporate benefit" for the target and its new owner, the Section 205 Validation cleared alleged deal defects. And just as the plaintiff in *Cirillo* was entitled to attorneys' fees for causing that benefit, the Stockholder Plaintiff is entitled to fees.

### 2. Opposed?

Petitioners argue that the Stockholder Plaintiff's counsel is not entitled to fees for causing the Section 205 Validation because the Stockholder Plaintiff moved to intervene in the Section 205 action and opposed the Section 205 petition in part.

---

[36] *Cirillo,* at 33.

[37] *Id.* at 37.

The court has the inherent power to deny mootness fees, even where all three *TakeCare* criteria are met, due to a plaintiff's litigation conduct. This equitable override fulfills the policy goals of compensating counsel for "beneficial results they produced, provided that the action was meritorious and had a causal connection to the conferred benefit."[38] The idea is to incentivize socially beneficial conduct and discourage wasteful litigation.

Not all forms of opposition warrant an equitable override. Two cases authored by Chancellor Bouchard illustrate the distinction—*Almond v. Glenhill Advisors LLC*[39] and *Cirillo*.[40]

In *Almond*, two former stockholders challenged a short-form merger.[41] The court entered post-trial judgment for the defendants on all counts. In the litigation, however, the plaintiffs identified statutory problems with a reverse stock split that affected the 90% ownership threshold needed to complete a short-form merger. The defendants counterclaimed for judicial validation under Section 205, and the court granted that relief. Although the plaintiffs lost on all claims, they moved for fees, arguing that they caused a corporate benefit. Chancellor Bouchard denied fees because the plaintiffs opposed Section 205 validation at every turn, including through appeal.[42] He reasoned that, "[r]ather than work[ing] constructively with defendants

---

[38] *Allied Artists,* 413 A.2d at 878.

[39] 2019 WL 1556230 (Del. Ch. Apr. 10, 2019), *aff'd,* 224 A.3d 200 (Del. 2019).

[40] C.A. No. 10116-CB (Del. Ch. Feb. 19, 2019) (TRANSCRIPT).

[41] *Almond*, 2019 WL 1556230, at *1.

[42] *Id.* at *8.

to correct what should have been obvious to plaintiffs to be a series of technical mistakes, plaintiffs chose a path of opposition."[43] He contrasted those plaintiffs with cases "where the corporations obtained the remedial benefits quickly, consensually, and without being forced to engage in protracted litigation."[44]

In *Cirillo,* a stockholder challenged the approval of a merger by written consent under Section 228 of the DGCL, the defendants counterclaimed to validate the written consent under Section 205, and the plaintiff opposed the Section 205 request. On summary judgment, the court granted validation, mooting the plaintiff's claims. The plaintiff then sought a mootness fee, which the defendants opposed. Because the plaintiff outright opposed the Section 205 counterclaim, the defendants reasoned that the plaintiff's counsel could not claim a fee for causing it. Chancellor Bouchard disagreed and awarded a fee. He did so in part because the plaintiff's opposition to validation was "perfunctory" and in part because the plaintiff "identified a real problem that led to a real benefit in having the merger validated."[45] The plaintiff's opposition to the Section 205 validation did not obviate the benefit that the plaintiff

---

[43] *Id.* at *1.

[44] *Id.* at *8 & 5 n.27 (citing *In re Xencor, Inc.*, C.A. No. 10742-CB, at 4–5, 52–54 (Del. Ch. Dec. 10, 2015) (TRANSCRIPT); *In re Colfax Corp.,* C.A. No. 10447-VCL, at 3–4, 36 (Del. Ch. Apr. 2, 2015) (TRANSCRIPT*); In re Cheniere Energy, Inc.,* C.A. No. 9710-VCL, at 10, 98, 104 (Del. Ch. Mar. 16, 2015) (TRANSCRIPT); *Olson,* 2011 WL 704409, at *6–8, *15; and *Cirillo,* at 32–43).

[45] *Cirillo*, at 39. The Chancellor had both *Almond* and *Cirillo* under submission at the same time. *Almond* was argued on January 9, 2019, *Cirillo* was decided through a bench ruling on February 19, 2019, and *Almond* was published as a Memorandum Opinion on April 10, 2019. Thus, although neither case references the other, it is fair to say that the Chancellor viewed the plaintiffs' conduct as sufficiently distinguishable to warrant different outcomes.

had conferred nor disqualify the plaintiff's counsel from obtaining fees for that benefit.

Here, the Stockholder Plaintiff did not choose an irrational or wasteful strategy in opposing the Section 205 Validation. The Stockholder Plaintiff intervened in this action for the limited purpose of preserving its other claims in the Plenary Action. And it succeeded in that effort. This is not the sort of litigation conduct that raises concern and does not warrant denial of the fee petition.

### 3. Same Or Similar Relief?

Petitioners argue that the corporate benefit must be the same as or similar to the relief that the plaintiff sought in the litigation to warrant mootness fees. Relying on multiple decisions of Delaware courts, Petitioners present a similarity test that calls for a straight-up comparison between the Section 205 Validation and the relief sought by the Stockholder Plaintiff in the Plenary Action.[46] If they are not similar, Petitioners say that the Stockholder Plaintiff is not entitled to fees. This is so even if all three of the *TakeCare* elements have been met. In this way, Petitioners present the similarity test as a fourth element of the *TakeCare* standard.

Petitioners argue that the Section 205 Validation does not satisfy the similarity test because the Stockholder Plaintiff sought to invalidate the Merger, not validate it. The Stockholder Plaintiff responds that it has met the similarity test.

Before conducting the comparison, it is worth taking a moment to consider the merits of what Petitioners present as the similarity test. That test derives from the

---

[46] Petitioners' Answering Br. at 18–23.

Delaware Supreme Court's 1980 decision in *Allied Artists Pictures Corp. v. Baron*.[47] There, a stockholder-plaintiff challenged a director election and claimed that the wrongfully elected board had failed to pay accumulated dividend arrearages on preferred stock. The trial court entered summary judgment against the stockholder, who appealed the decision. While on appeal, the corporation closed a merger that paid the dividend arrearages as consideration. The merger thus delivered "precisely the relief" that the stockholder sought in the litigation.[48] The stockholder petitioned the trial court for a mootness fee, and the trial court granted the petition. The defendant appealed the fee award, arguing that a stockholder cannot claim to have caused a benefit where the trial court ruled against the stockholder on the merits.

The Delaware Supreme Court affirmed the fee award. The opinion focused on clarifying what merits-based standard a claim must meet to warrant a mootness fee. The court held that the standard is whether the claim was meritorious when filed, and whether the claim was still capable of producing "the effect intended by filing the suit" at the time the benefit was conferred.[49] On the facts presented, the plaintiff met both criteria because the claims were meritorious when filed and "further judicial scrutiny . . . could have changed the result" at the trial court level.[50]

---

[47] 413 A.2d 876 (1980).

[48] *Id.* at 878.

[49] *Id.* at 879.

[50] *Id.*

In reaching this conclusion, the high court discussed the policy reasons for allowing fee awards where a corporation take steps to settle or moot a case. That discussion contains the language cited as the source of the similarity test. As the court observed,

> The reasons for allowing an award of attorneys' fees to plaintiff's counsel where a defendant corporation takes steps to settle or moot the case *and in so doing produces the same or similar benefit sought by the shareholder's litigation* is to prevent frustration of the remedial policy of providing professional compensation for such suits when meritorious. This rule insures that, even without a favorable adjudication, counsel will be compensated for the beneficial results they produced, provided that the action was meritorious and had a causal connection to the conferred benefit.[51]

That passage is dicta. The "same or similar" phrase is dictum nestled within the broader dicta. The *Allied Artists* court did not offer up the phrase as a standard for evaluating a mootness fee.

Decisions of this court nevertheless elevated the "same or similar" language to something approaching a standard, though in differing ways. In *Eisenberg*, this court examined similarity when evaluating causation.[52] In *Grimes*, the court folded the similarity test into the second element of the test for mootness fees, articulating that

---

[51] *Id.* at 878 (emphasis added).

[52] *Eisenberg,* 1998 WL 112910, at *5 (observing that "a claimed benefit must have some basic relationship to the grievance which led to the filing of the complaint" and denying fees because "[a]ny resulting benefits to the common shareholders were an incidental and fortuitous consequence of [the company's] new dividend policy. Accordingly, those benefits are too remote to be treated as having resulted from the plaintiff's litigative efforts").

14

element as "the action rendering the litigation moot produced the same or similar benefit sought by the litigation."[53] In five cases—*Burlington Northern v. Sterman,*[54] *Rovner v. Health-Chem Corp.,*[55] *Winthrop v. Central Coal & Coke Corp.,*[56] *Golubinski v. Douglas,*[57] and *In re Oracle Corp. Derivative Litigation*[58]—the court treated the similarity test as a fourth element of the mootness fees standard. *Burlington* and *Rovner* adopted the language of the similarity test when articulating the standard but did not apply it.[59] In contrast, *Winthrop*, *Golubinski*, and *Oracle* denied fees for lack of similarity.[60]

---

[53] *Grimes,* 791 A.2d at 821; *see also Dover Hist. Soc'y Inc. v. City of Dover Plan. Comm'n*, 902 A.2d 1084, 1092 (Del. 2006) (adopting the *Grimes* articulation of the standard for mootness fees); *La. State Empls. Ret. Sys. v. Citrix Sys., Inc.*, 2001 WL 1131364, at *4 (Del. Ch. Sep. 19, 2001) (same); *Julian v. E. States Const. Serv., Inc.*, 2008 WL 2673300, at *20 (Del. Ch. July 8, 2008) (adopting the *Dover Historical Society* articulation of the standard for mootness fees); *Sutherland v. Sutherland,* 2010 WL 1838968, at *16 (Del. Ch. May 3, 2010) (adopting the *Citrix* articulation of the standard for mootness fees).

[54] 1984 WL 21122, at *2 (Del. Ch. Dec. 7, 1984).

[55] 1998 WL 227908, at *3 (Del. Ch. Apr. 27, 1998).

[56] 2000 WL 33173168, at *1–2 (Del. Ch. Jan. 28, 2000).

[57] C.A. 2021-0172-JTL, at 69:3–8, 90 (Del. Ch. Oct. 18, 2022) (TRANSCRIPT), *aff'd,* 299 A.3d 2 (Del. 2023) (TABLE).

[58] 2024 WL 472396, at *7–8 (Del. Ch. Feb. 7, 2024).

[59] *Burlington,* 1984 WL 21122, at *2–4 (granting fees to a plaintiff who came into the case as an intervenor, rejecting other plaintiff's argument that the intervenor did nothing to cause the benefit, omitting any similarity analysis); *Rovner,* 1998 WL 227908, at *2–4 (granting fees, omitting any similarity analysis).

[60] *Winthrop*, 2000 WL 33173168, at *1–2 (denying fees where a plaintiff sought to replace a slate of directors where the benefit confirmed the directors' entitlement to office); *Golubinski,* at 88:11–17 (denying fees where the plaintiffs sought to invalidate grants and the benefit ratified the grants); *Oracle*, 2024 WL 472396, at *7 (denying fees where the plaintiff brought derivative claims challenging Oracle's acquisition of NetSuite, Oracle added two independent directors to the board to compose a majority

The few cases applying the similarity test to deny fees reflect a spectrum of approaches. The test might require a "tight[] fit"[61] between the benefit and the mooted lawsuit, as described in *Winthrop*, or it might have more "play in the joints,"[62] as suggested in *Golubinski*,[63] requiring only "some basic relationship to the grievance."[64] Whatever else is required, the clear message is that "you can't have . . . an outcome that is 180 degrees from what you originally sought."[65]

Since *Allied Artists*, only one Delaware Supreme Court decision has used the "same or similar" language. In *Dover Historical Society*, a historical association and neighbors challenged the construction of an office building in a historic neighborhood.[66] The litigation resulted in a revised construction plan, but one that called for the partial destruction of four historic buildings. The plaintiffs both challenged the revised plan and sought fees on the ground that the revised plan

---

of a special litigation committee, the special litigation committee recommended that the claims go forward, the court entered post-trial judgment for the defendants, and the plaintiff moved for fees under the corporate benefit doctrine causing Oracle to add two independent directors); *id.* at *2 ("If Plaintiffs are correct that the New Directors were engaged primarily to serve on the SLC in response to Plaintiffs' suit, that is not a benefit created by the efforts of Plaintiffs—it is merely a collateral effect of this litigation, and awarding fees in this situation would create an unwholesome incentive.").

[61] *Winthrop*, 2000 WL 33173168, at *2.

[62] *Golubinski*, at 88.

[63] *Id.*, at 82–88 (discussing *TakeCare, Citrix, Rovner, Burlington, Grimes, Eisenberg, Dover Historical Society,* and *Winthrop*).

[64] *Eisenberg,* 1988 WL 112910, at *5.

[65] *Golubinski*, at 88:9–11.

[66] 902 A.2d at 1092.

16

created a common benefit. The day after receiving the plaintiffs' renewed challenge, one of the defendants angrily demolished three of the buildings. As a result, the city revoked the defendants' architectural review certificate. The plaintiffs then filed a second fee petition seeking fees under the mootness doctrine and bad faith exception to the American rule. The trial court denied the fee petitions.

The Delaware Supreme Court affirmed the trial court's decision denying mootness fees and remanded the case to reconsider the fee petition under the bad faith exception. The high court used the phrase "same or similar" once, when parroting the *Grimes* articulation of the standard for mootness fees.[67] But the decision did not focus on whether the action that mooted the plaintiffs' claims (the demolition) caused a benefit sufficiently similar to that sought by the litigation (the revocation of the certificate *and* preservation of the historical buildings). Instead, the high court explained that the "[m]ore fundamental[]" reason for denying a mootness fee was that the plaintiffs' litigation did not cause the loss of the defendants' certificate at all, thus failing the "causal connection" prong of the test.[68] Although *Dover Historical* uses the phrase "same or similar," it would be a stretch to view the decision as endorsing (or even informing) its use.

---

[67] *Id.* at 1092 ("Under the 'mootness' exception, a court may award attorneys' fees where the fee applicant demonstrates that: (1) the litigation was meritorious when filed, (2) the action rendering the litigation moot produced the same or a similar benefit sought by the litigation, and (3) there was a causal relationship between the litigation and the action taken producing the benefit.").

[68] *Id.* at 1093. The high court also expressed skepticism about extending the corporate benefit doctrine to the building construction context, *id.* at 1091, and chided the plaintiffs for advancing inconsistent positions in its fee arguments, *id.* at 1093.

Ultimately, there is good reason to question the vitality of the similarity test. The Delaware Supreme Court in *TakeCare* established a standard for awarding mootness fees for causing a corporate benefit that does not refer to the similarity test.[69] And the *TakeCare* standard has been adopted (expressly or in substance) by at least five cases of the Delaware Supreme Court and twenty-eight decisions of this court.[70] Cases like *Cirillo* reflect this court's willingness to award mootness fees even when the relief sought in the litigation bears no similarity to the corporate benefit caused by the litigation. It would simplify our law to reject the similarity test and make clear that a plaintiff need only meet the three *TakeCare* elements, subject to the equitable override.[71]

If Delaware law requires some version of the similarity test, the Stockholder Plaintiff passes that test here. Petitioners say that the sole aim of the statutory claims was to invalidate the Merger.[72] Across all four complaints, the Stockholder

---

[69] *TakeCare,* 693 A.2d at 1079.

[70] *See supra* n.14.

[71] Perhaps a similarity test makes sense as a condition to the presumption of causation. Recall that a plaintiff is entitled to a presumption of causation if the corporate benefit occurred while the lawsuit was pending. In those situations, to overcome the presumption of causation, a defendant must prove "by the preponderance of the evidence, that no causal connection (whether direct or indirect) existed between the [beneficial action] and the plaintiffs' litigation efforts." *TPC Gp.,* 2014 WL 5500000, at *2 (citing *Alaska Elec. Pension Fund,* 988 A.2d at 417–18). If, however, the benefit bears no relationship to the relief sought in the litigation, it seems unfair to place that burden on the defendants. Here, Petitioners conceded causation, so the presumption is not at issue.

[72] Petitioners' Answering Br. at 1–2, 18–23.

Plaintiff sought a declaration that the Merger is invalid.[73] The Stockholder Plaintiff reiterated its request for invalidation before Petitioners initiated this action.[74] And the Stockholder Plaintiff called for a declaration of invalidity after Petitioners filed the Section 205 petition. To Petitioners, the Section 205 Validation was 180 degrees from what the Stockholder Plaintiff sought.

But Petitioners' narrative ignores countervailing aspects of the litigation. The Stockholder Plaintiff filed its initial complaint on November 3, 2022, warning the defendants that the Section 251 "violations will render Activision's merger with Microsoft . . . invalid *if* consummated."[75] The Stockholder Plaintiff's amended complaint, Opposition to Defendants' Motion to Stay, and Motion for Expedited Proceedings all pointed out that the defendants could fix the statutory defects.[76] In

---

[73] *See* C.A. 2022-1001-KSJM Dkt. 1 (Complaint) at 204 (seeking a "declar[ation] that the Merger . . . did not comply with Section 251 in several respects, rendering the Merger invalid and an unlawful conversion of stockholders' shares"); *id.* Dkt. 19 (First Am. Compl.) at 253 (same); *id.* Dkt. 136 (Second Am. Compl.) at 302–03 (same); *id.* Dkt. 171 (Third Am. Compl.) at 318–19 (similar).

[74] *Id.* Dkt. 124 at 51:23–24 (Del. Ch. Nov. 30, 2023) (TRANSCRIPT) ("We plead that the [M]erger is invalid for failure to comply with Section 251."); *id.* Dkt. 87 at 47–48 ("This deliberate denial of a statutory right, particularly when combined with other statutory violations, warrants finding the Merger invalid."); *id.* Dkt. 111 at 15 ("Plaintiff seeks partial summary judgment on Count I, which asks for 'a Declaratory Judgment' that the Merger is invalid because of Defendants' multiple failures to meet Section 251's requirements[.]"); *id.* at 63 ("Invalidating this Merger because of Defendants' deliberate failure to comply with Section 251, including for nearly a year after Plaintiff called deficiencies to their attention, is not 'absurd.'").

[75] C.A. 2022-1001-KSJM Dkt. at 1 (emphasis added); *see also id.* ¶¶ 7, 291; *id.* Dkt. 19 ("First Am. Compl.") at p.1, ¶¶ 7, 342.

[76] First Am. Compl. ¶ 374; C.A. 2022-1001-KSJM Dkt. 35 (Pl.'s Opp. to Defs.' Mot. to Stay) ¶ 20; *id.* Dkt. 41 (Pl.'s Mot. to Expedite) ¶ 4.

19

a May 15, 2023 letter to defense counsel, the Stockholder Plaintiff's counsel stated: "Plaintiff is troubled and puzzled by the Activision Defendants' continuing refusal to cure their failure to comply with 8 *Del. C.* § 251 . . . It is still not too late to fix the defects."[77] To now say that the Stockholder Plaintiff's sole aim was to invalidate the Merger is inaccurate. Petitioners' same-or-similar argument thus falters under a false factual premise.

### 4.    Too Soon?

Petitioners argue that a fee award is premature or "interim," and that the Section 205 Validation was a "Partial Validation Order," because it left unresolved the "tightly interrelated" fiduciary claims in the Plenary Action.[78] But the Section 205 Action is fully resolved, and the Section 205 Validation fully resolved the statutory claims, as Petitioners stipulated.[79] The award is not interim.

Even if it were interim, a fee award would be appropriate. Although Delaware law generally disfavors interim fees, the court has the discretion to award them.[80] An interim fee award may be warranted where "the plaintiff has achieved the benefit sought by a claim that has been mooted or settled and that benefit is not subject to reversal or alteration."[81]

---

[77] Dkt. 31, Ex. I.

[78] Petitioners' Answering Br. at 32.

[79] Dkt. 27 ¶ 2.

[80] *In re Del Monte Foods Co. S'holders Litig.*, 2011 WL 2535256, at *6–7 (Del. Ch. June 27, 2011).

[81] *Citrix*, 2001 WL 1131364, at *4.

The Section 205 Validation is not subject to reversal or alteration. The Merger has closed, and the Section 205 Validation cured any statutory defects. There is precedent for allowing fiduciary claims to proceed after statutory validation. In *Ryan v. Mindbody Inc.*, the court awarded a fee for Section 205 relief even though breach of fiduciary duty claims would continue to be litigated in a separate action.[82] So too in *Hawkes*, where the court awarded a fee for causing a Section 203 vote even though breach of fiduciary duty claims would proceed in the same action.[83] As in *Ryan* and *Hawkes*, it is appropriate to award fees although the transaction will be "twice tested" as the fiduciary claims proceed.

## B.    The *Sugarland* Analysis

The parties dispute the amount of the fees. The Stockholder Plaintiff seeks an all-in fee and expense award of $15 million. Petitioners argue for an award in the range of $1 to $2 million. The Stockholder Plaintiff bears the burden of proving the reasonableness of its fee request.[84]

When setting the amount of attorneys' fees, the court "must make an independent determination of reasonableness" of the amount requested.[85] To do so, the court follows the *Sugarland* factors.[86] Those factors are:

---

[82] *Ryan II*, at 6–8, 21–23.

[83] *Hawkes,* at 106–13 (TRANSCRIPT) (noting benefit of Section 203 vote was not easily quantified).

[84] *Boyer v. Wilm. Mat'ls, Inc.*, 1999 WL 342326, at *1 (Del. Ch. May 17, 1999).

[85] *Goodrich*, 681 A.2d at 1046.

[86] *Sugarland Indus., Inc. v. Thomas*, 420 A.2d 142 (Del. 1980).

(i) the amount of time and effort applied to the case by counsel for the plaintiffs; (ii) the relative complexities of the litigation; (iii) the standing and ability of petitioning counsel; (iv) the contingent nature of the litigation; (v) the stage at which the litigation ended; (vi) whether the plaintiff can rightly receive all the credit for the benefit conferred or only a portion thereof; and (vii) the size of the benefit conferred.[87]

Of these seven factors, the primary consideration is the benefit achieved. As this court has held, "[i]n determining the size of an award of attorneys' fees, courts assign the greatest weight to the benefit achieved in light of the nature of the claims and the likelihood of success on the merits."[88] "Secondary factors include the complexity of the litigation, the standing and skill of counsel, and the contingent nature of the fee arrangement together with the level of contingency risk actually involved in the case."[89]

### 1. The Primary *Sugarland* Factor

The primary *Sugarland* factor looks to the value of the benefit that counsel created.[90] If the benefit is quantifiable, *"Sugarland* calls for an award of attorneys'

---

[87] *In re Plains Res. Inc.*, 2005 WL 332811, at *3 (discussing *Sugarland*, 420 A.3d at 149–150); *see also Ams. Mining Corp. v. Theriault*, 51 A.3d 1213, 1254 (Del. 2012).

[88] *Olson*, 2011 WL 704409, at *8 (internal quotation marks omitted).

[89] *Id.*

[90] *In re Dell Techs. Inc. Class V S'holders Litig.* (*"Dell Appeal"*), 326 A.3d 686, 698 (Del. 2024) ("The court must . . . consider the degree of the 'cause and effect' between what counsel accomplished through the litigation and the ultimate result.").

fees based on a percentage of the benefit."[91] To select the percentage, the Delaware Supreme Court has endorsed a stage-of-case approach from *Americas Mining*.[92]

If the benefit is hard to value, setting fees can be more of a challenge. In these circumstances, a court can look to "precedent awards from similar cases" under the equitable principle that "like cases should be treated alike."[93] A precedent-based approach has its limits, because cases can be *sui generis*, defy comparison, or involve unique traits. This court, therefore, has deployed bespoke methods for valuing corporate benefits where those methods are sufficiently reliable.[94]

Given the complexities of valuing therapeutic benefits, the hours worked by counsel serve as an important "cross-check to guard against windfall awards."[95] In the unusual case where none of the accepted approaches to valuing therapeutic benefits prove reliable, this court has resorted to a quantum meruit analysis.[96]

---

[91] *Ams. Mining*, 51 A.3d at 1259.

[92] *Id.* at 1259–60; *In re Dell Techs. Inc. Class V S'holders Litig.* ("*Dell Chancery*"), 300 A.3d 679, 703 (Del. Ch. 2022), *aff'd,* 326 A.3d 686 (Del. 2024).

[93] *Sciabacucchi v. Salzberg*, 2019 WL 2913272, at *1 (Del. Ch. July 8, 2019) *rev'd on other grounds,* 227 A.3d 102 (Del. 2020); *see also Olson*, 2011 WL 704409, at *8 (same); *Hawkes,* at 106 (noting "[t]he Court must look at precedent to assess the appropriate value of the corporate benefit").

[94] *See, e.g.*, *In re Emerson Radio S'holder Deriv. Litig.*, 2011 WL 1135006, at *6 (Del. Ch. Mar. 28, 2011) (calculating the benefit of corporate governance provisions by calculating the risk of additional related-party transactions); *La. Mun. Police Empls.' Ret. Sys. v. Black,* 2016 WL 790898, at *8 (Del. Ch. Feb. 19, 2016) (calculating the benefit of deal protection measures and additional disclosures).

[95] *Dell Appeal*, 326 A.3d at 693.

[96] *See, e.g.*, *In re Golden State Bancorp Inc. S'holders Litig.*, 2000 WL 62964, at *3 (Del. Ch. Jan. 7, 2000) ("Oftentimes, when this Court determines fee awards in a therapeutic benefit case, it uses a quantum meruit analysis. Under such an analysis, the Court adds a premium to the plaintiffs' attorneys typical noncontingency fee in

In all events, the court "does not aspire to mathematical exactitude."[97]  The court instead strives to "help establish an order or magnitude within which this Court can craft an appropriate award."[98]

The Stockholder Plaintiff advances three non-traditional valuation methods.[99] Petitioners, in contrast, urge the court to look exclusively at precedent awards to value the benefit, then discount those amounts given the circumstances of this case.[100]

To value the Section 205 Validation, the Stockholder Plaintiff first points to the termination fee in the merger agreement, arguing that the fee reflects Petitioners' estimate of the harm that would result from Activision's breach of its representation

---

proportion to the benefit the plaintiffs' attorneys achieved for their clients."); *Citrix,* 2001 WL 1131364, at *9–10 (declining to "engage in complicated and highly speculative intellectual exercises in attempting to quantify what is, in essence, the non-quantifiable benefit achieved by" the withdrawal of a proposed amendment to a stock option plan; rejecting the plaintiffs' argument the benefit was worth $183 million and instead awarding a $140,000 fee "based on quantum meruit principles"); *Siegman v. Palomar Med. Techs. Inc.*, 1998 WL 409352, at *6 (Del. Ch. July 13, 1998) (awarding $125,000 on a quantum meruit basis rather than the $550,000 sought where the plaintiff achieved a substantial, but difficult to quantify corporate benefit claimed to be worth $50 million); *see also Sciabacucchi,* 2019 WL 2913272, at *6 (discussing the "drawbacks" to the lodestar method and noting that "if there are precedents on which to base a fee award . . . then the court should look in the first instance to those precedents" and "fall back to the quantum meruit version of the lodestar approach" only if such precedent is lacking).

[97] *In re Compellent Techs., Inc., S'holder Litig.*, 2011 WL 6382523, at *20 (Del. Ch. Dec. 9, 2011); *see also In re Versum Mat'ls, Inc. S'holder Litig.*, Cons. C.A. No. 2019-0206-JTL, at 74–76 (Del. Ch. July 16, 2020) (TRANSCRIPT), *aff'd*, 248 A.3d 105 (Del. 2021).

[98] *Compellent*, 2011 WL 6382523, at *20.

[99] Dkt. 42 (Pl.'s Reply Br.) at 6–10.

[100] Petitioners' Answering Br. at 31, 37–43.

that its board and stockholders approved the merger agreement in compliance with the DGCL. They next look to the cost of obtaining an insurance policy against the possibility of loss due to invalidity, arguing that the Section 205 Validation is a superior form of protection. They last propose a risk matrix like the one used in *Compellent*, which estimates the value of eliminating the risk of loss. The first theory pegs the value at $2.27 billion.[101] The Stockholder Plaintiff does not precisely value the benefit under its second theory. The third theory results in a value range from $100 million to $1 billion.[102]

None of the Stockholder Plaintiff's theories are crazy, but this court has never applied any of them to calculate a mootness fee. Although novelty is not a damning quality, and valuing a corporate benefit is never an exact science, fee awards establish precedents that set the market for future litigation. A plaintiff thus must prove the soundness of a new valuation method when advancing it.

The Stockholder Plaintiff did not quite convince the court of the soundness of its methodologies here. Working through them in reverse order, the Stockholder Plaintiff's third theory is problematic for a few reasons. For one, the *Compellent*-type measure creates an unwieldly valuation range, and a *Compellent*-type analysis is more persuasive when supported by expert testimony and statistical studies, which

---

[101] Dkt. 31 ("Pl.'s Opening Br.") at 36.

[102] *Id.* at 47.

the Stockholder Plaintiff has not proffered.[103]   The Stockholder Plaintiff's second theory also suffers from a lack of empirical or expert support.

That leaves the first theory.  The Section 205 Validation eliminated an issue which, in some circumstances, would create an obligation to pay a termination fee—in essence a liquidated damages provision.[104]  One court argue that the parties thus priced the value of the Merger's loss by agreeing to the termination fee.  But that argument ignores Section 205.  Although it was reasonably conceivable that Activision breached representations and warranties in the Merger Agreement by violating Section 251 of the DGCL, Section 205 was always available to fix noncompliance.  It cannot be true in the real world that the parties viewed the termination fee of over $2.27 billion as an estimate of the harm that a fixable statutory defect would cause.

---

[103] *Compare Compellent,* 2011 WL 62382523 (Del. Ch. Dec. 9, 2011) (quantifying the value of rescission of a rights plan using empirical evidence of likelihood of a topping bid, the expected value of a topping bid, and the percentage of the benefit to which counsel was entitled) *with Anderson v. Magellan Health, Inc.*, 298 A.3d 734 (Del. Ch. 2023) (declining to follow *Compellent*'s methodology because plaintiff's request relied on a single online study and the plaintiff did not attempt to quantify the incremental value his efforts provided).

[104] *See Brazen v. Bell Atlantic Corp,* 695 A.2d 43, 47–49 (Del. 1997) (applying the liquidated damages rubric to uphold the at-issue termination fee provision and noting "that liquidated damages, by definition, are damages paid in the event of a breach of contract"); *Ainslie v. Cantor Fitzgerald, L.P.,* 2023 WL 106924, at *12 (Del. Ch. Jan. 4, 2023) *rev'd on other grounds sub nom Cantor Fitzgerald, L.P. v. Ainslie,* 312 A.3d 674 (Del. 2024) (noting that "when contractual damages are difficult to estimate, parties to a contract may stipulate that a fixed amount should be paid upon breach. If valid, these provisions are known as liquidated damages provisions"); *see also* Petitioners' Answering Br. at 47.

Given the issues with the Stockholder Plaintiff's methodologies, Petitioners' appeal to precedent is far more persuasive. Of the authorities the parties identified, *Olson* and *In re Cheniere Energy, Inc.* are most instructive.[105]

In *Olson*, a stockholder challenged a top-up option as violating Sections 152, 153, and 157 of the DGCL. The court viewed the plaintiff's claims as colorable and granted expedited proceedings. A week later, the defendants revised the merger agreement to moot the statutory claims.[106] Citing precedent awards for non-monetary benefits, the plaintiff requested $1.1 million in fees.[107] The court awarded the plaintiff $1 million for the statutory claims, stating that the amendments "conferred an unquantifiable but nevertheless significant corporate benefit."[108]

In *Cheniere*, the plaintiff claimed that the company's management incorrectly applied a votes-cast methodology when determining that the stockholders approved an amendment to a compensation plan.[109] The defendants responded by filing an action to validate the challenged amendment under Section 205, and the parties reached a comprehensive settlement.[110] The settlement provided for multiple benefits, which the court valued individually. Citing *Olson,* the court described the

---

[105] *See* Petitioners' Answering Br. at 28, 39–40, 44 (relying on *Olson*); *id.* at 40, 44–45 (relying on *Cheniere*); *see also* Pl.'s Opening Br. at 27, 29 (relying on *Olson*).

[106] *Olson*, 2011 WL 704409, at *2–7.

[107] C.A. No. 5583-VCL, Dkt. 55 (Pl.'s Opening Brief in Support of Fees) at 30–32.

[108] *Olson,* 2011 WL 704409, at *11, 14–15.

[109] *Cheniere,* at 91–92.

[110] *Id.* at 93–96.

statutory claim as "strong" and awarded $1 million for achieving validation under Section 205.[111]

As in *Olson* and *Cheniere*, the Stockholder Plaintiff's legal claims were strong. As in *Olson*, the Stockholder Plaintiff identified more than one viable statutory defect that the Section 205 Validation cured. The scope of the claims and precedent suggest an award of $2 million, which is the high end of the range proposed by Petitioners.

Petitioners urge this court to discount this amount because "any benefit is offset by litigation expenses," and Petitioners still face liability for the Stockholder Plaintiff's other claims.[112] By seeking a discount for defense costs, Petitioners effectively seek fee-shifting contrary to the American rule. And regardless of the outcome of the Stockholder Plaintiff's other claims, the Section 205 Validation created a benefit.[113]

### 2. The Secondary *Sugarland* Factors

There are four remaining *Sugarland* factors: the time and effort of counsel; the relative complexities of the litigation; the contingency factor; and the standing and

---

[111] *Id.* at 92, 104.

[112] Petitioners' Answering Br. at 31–33.

[113] Petitioners rely on *Crothall v. Zimmerman*, where the plaintiff abandoned a derivative suit after the trial court awarded $1 in nominal damages for one claim and entered judgment for the defendants on the others. Petitioners' Answering Br. at 31–32 (citing *Crothall v. Zimmerman,* 94 A.3d 733, 736 (Del. 2014)). The plaintiff then sold his shares, depriving him of standing, and the parties stipulated to dismissal. Later, the plaintiff's former counsel sought fees, and the trial court awarded an amount close to counsel's lodestar. The Delaware Supreme Court reversed, concluding that the plaintiff had caused only "uncertainty" and no benefits. The Stockholder Plaintiff's litigation conduct is not comparable—it created certainty, not the opposite.

28

ability of counsel. These factors "may cause the court to adjust the indicative fee up or down."[114]

Although the Delaware Supreme Court has repeatedly rejected the lodestar method to quantify benefits, the "[h]ours worked are considered as a crosscheck to guard against windfall awards, particularly in therapeutic benefit cases."[115] The Stockholder Plaintiff's counsel has expended much time in this case so far, including a Section 220 action, briefing and arguing a motion to dismiss, and negotiating the Section 205 Validation. In total, the attorneys have recorded 7,133.4 hours of time between the time the Stockholder Plaintiff's counsel drafted the first Section 220 demand to signing the Section 205 Validation stipulation.[116] Based on counsel's hourly rates, this equals about $5,221,572 worth of time. Counsel estimates they spent half of this time, approximately 3,566.7 hours valued at $2,610,736, on the statutory claims.[117]

Petitioners dispute this figure because the Stockholder Plaintiff did not submit any documentation supporting its rough estimate. They also argue that this figure is dubious because the allegations related to the statutory claims make up less than 10% of the content of the Stockholder Plaintiff's complaints.[118] They argue that the

---

[114] *Dell Chancery*, 300 A.3d at 692.

[115] *Olson*, 2011 WL 704409, at *8.

[116] Dkt. 33 ("Greenspan Aff.") ¶ 7.

[117] *Id.*

[118] Petitioners' Answering Br. at 51–55.

early stage of the litigation counsels against a large fee award.[119]  The court will not second guess counsel's estimate of the time devoted to the statutory claims, recognizing that counsel cannot claim those hours on any subsequent fee application relating to the fiduciary or tort claims.  A $2 million fee represents a steep discount on the lodestar multiplier, which supports adjusting the fee up.

That the litigation is contingent is the "second most important factor considered by the Court in awarding the counsel fee[.]"[120]  "It is the 'public policy of Delaware to reward risk-taking in the interests of shareholders."[121]  Thus, "[t]his Court has recognized that an attorney may be entitled to a much larger fee when the compensation is contingent than when it is fixed on an hourly or contractual basis."[122] "Accepting contingency risk is what enables counsel to receive an award based on the results generated by the litigation that exceeds their lodestar."[123]  The Stockholder Plaintiff's counsel are litigating this case on a fully contingent basis,[124] which weighs in favor of a fee award though it does not support adjusting the fee in either direction.

The complexity of the litigation was also significant. This case was relatively complex, because little caselaw exists on Section 251(b), and none of those decisions

---

[119] *Id.* at 54.

[120] *Dow Jones & Co. v. Shields*, 1992 WL 44907, at *2 (Del. Ch. Jan. 10, 1992).

[121] *In re Activision Blizzard, Inc. S'holder Litig.,* 124 A.3d 1025, 1073 (Del. Ch. 2015) (quoting *In re Plains Res. Inc.*, 2005 WL 332811, at *6).

[122] *Ryan v. Gifford*, 2008 WL 18143, at *13 (Del. Ch. Jan. 2, 2009).

[123] *Dell Chancery*, 300 A.3d at 726.

[124] Greenspan Aff. ¶ 4.

directly addressed the issue before the court.[125]  The Stockholder Plaintiff had to brief novel issues of law to survive the motion to dismiss.  That factor weighs in favor of a meaningful fee award and supports adjusting the fee up.

Finally, the Stockholder Plaintiff's counsel come from reputable firms well-known to the court.  They are experienced in and skilled at complex litigation.  This weighs in favor of an award.

Given the lodestar and complexity of the litigation, the court adjusts the fee award up by $500,000.

## III.    CONCLUSION

The Stockholder Plaintiff's counsel is awarded attorneys' fees of $2.5 million.  Counsel must submit a form of order memorializing this decision within one week.

---

[125] *Activision,* 2024 WL 863290, at *4.